838 P.2d 469

**In the Matter of DANNY R., a Child, and Jesus and Felipa R., His Parents.**

**No. 12531.**

Court of Appeals of New Mexico.

May 21, 1992.

Rehearing Denied July 20, 1992.

Certiorari Denied Aug. 25, 1992.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for appellee.

Sammy R. Quintana, Chief Public Defender, Hollis Ann Whitson, Appellate Defender, Santa Fe, for the Child.

## OPINION

MINZNER, Judge.

The child, who was born on November 27, 1971, appeals the revocation of his probation for embezzlement, contrary to NMSA 1978, Section 30–16–8 (Cum.Supp. 1991), arguing that (1) "[t]he state is barred, by public policy considerations, from prosecuting [him] for embezzlement because he breached the conspiracy," and (2) " '[e]ntrustment' under the embezzlement statute should not include entrustment made pursuant to a criminal conspiracy." We affirm.

The relevant facts of this case are as follows. The child was adjudicated a delinquent in August 1988 because he allowed himself to be served alcohol. *See* NMSA 1978, § 32–1–3(O)(2) (Repl.Pamp.1989). The children's court placed him on probation "for an indeterminate period not to exceed two years" following adjudication and, among other conditions, ordered that he sign a Juvenile Probation Agreement. The Juvenile Probation Agreement provided, among other conditions, that he was to "comply with all federal, state, county and municipal laws and ordinances," "not consume or partake of any controlled substances or alcoholic beverages," and "not associate with any person(s) who may be involved in any unlawful acts." The agreement also obligated the child to attend "First Offenders Program through Border Area Mental Health Services and cooperate with them."

The petition to revoke probation filed in March 1990 alleged that the child violated the condition in the Juvenile Probation Agreement that he comply with state law because he committed the delinquent acts of conspiracy and embezzlement on or about August 31, 1989. The petition also alleged that the child "failed to complete the First Offenders Program." The allegations regarding conspiracy and failure to complete the program were dismissed prior to the entry of the judgment from which he appeals.

At a hearing before the children's court judge, the child admitted certain allegations of the petition to revoke his probation. He admitted the allegations contained in the second count, that he had been entrusted with sixty dollars by an undercover police officer to purchase marijuana and had converted the money with fraudulent intent to deprive its owner, Tri City Narcotic Enforcement Unit. At that hearing, he orally reserved the right to appeal the following question: "Can it be a crime to embezzle money that was entrusted to him to commit a crime?" *But cf. State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977) (where defendant, through a police informant, met with Drug Enforcement Administration agents and agreed to purchase heroin for a fixed sum, but disappeared after taking the money, there was sufficient evidence to support a conviction for embezzlement).

Under the terms of the judgment from which the child appeals, the children's court again placed him on probation "for an indeterminate period of time not to exceed two years." The court conditioned probation on the child signing a juvenile probation agreement and abiding by its terms. The court ordered that he be committed to the juvenile detention facility for fifteen days, but authorized the juvenile probation officer to credit up to fifteen days of detention if by August 31, 1990 (1) the child repaid the sixty dollars; (2) either paid a seventy-five dollar fine or performed forty hours of community service; and (3) showed verification that he had attended at least six AA meetings. The operation of the judgment was stayed pending appeal.

On appeal, the argument reserved at the children's court hearing seems to have been restated or refined into two arguments. In each argument the child contends, in effect, that Section 30–16–8

should not be construed to encompass his actions underlying the second count of the petition.

The first argument made on appeal is that the child has done nothing more than fail to perform an oral sales contract. Based on cases from other jurisdictions, he argues that the legislature never intended that breach of contract be prosecuted as a crime. The child may be arguing that when an action or series of actions can be viewed as a breach of contract, it cannot be prosecuted as a crime. If so, the argument is too broad.

■ As we recently indicated in *State v. Crews*, 110 N.M. 723, 728–29, 799 P.2d 592, 597–98 (Ct.App.1989), the fact that a breach of contract may be unenforceable in a civil action does not preclude a prosecution for criminal fraud. The success of such a prosecution will depend on whether there is sufficient proof of each of the elements required for conviction by the legislature when it enacted the statute. On these facts, the validity of a conviction for embezzlement would seem to turn on whether there was sufficient evidence that the child had received the money with a specific understanding that it was to be used for a particular purpose and only for that purpose.

■ Thus, with respect to the first argument raised on appeal, the proper disposition depends on whether the officer can be said to have "entrusted" the child with the money and whether the child can be said to have "converted" the money with "fraudulent intent." Under our case law, the existence of an entrustment for purposes of embezzlement requires a determination of whether the money was committed or surrendered " 'with a certain confidence regarding [the child's] care, use, or disposal.' " *See State v. Moss*, 83 N.M. 42, 44, 487 P.2d 1347, 1349 (Ct.App.1971) (quoting *Webster's Third New International Dictionary* (1966)). Under the Uniform Jury Instruction, " '[c]onverting something to one's own use' means keeping another's property rather than returning it, or using another's property for one's own purpose rather than for the purpose" intended by the owner. *See* SCRA 1986, 14–1641.

■ Here, there was no indication that the child knew the officer was working undercover. There was also no indication that the officer had any particular reason to place confidence in the child. Finally, there was no indication regarding when the child formed his intent to convert. *Cf. Ortiz*, 90 N.M. at 322, 563 P.2d at 116 (evidence was sufficient to show that the defendant intended to convert money after it was entrusted to him and thus to support a conviction for embezzlement; the defendant had been alternatively charged with fraud). Thus, there may have been an insufficient factual basis for concluding that the child had taken the property of another. *See* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.6(d) (1986); *see also Model Penal Code* § 223.8 commentary at 255–56, 262–66 (1980).

Nevertheless, the child admitted all the elements of the crime, including entrustment. We think he is bound by his admission and, without withdrawing that admission, may not challenge the sufficiency of the evidence to support the elements of entrustment. *See State v. Bonney*, 82 N.M. 508, 484 P.2d 350 (Ct.App.1971).

■ With respect to the second argument made on appeal, we believe the theory advanced by the child is contrary to Section 30–16–8. The child argues that he did not "lawfully" possess the money because the agreement was illegal, and that unless he was in lawful possession, he was not guilty of embezzlement. *See State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984). However, neither the statute nor the Uniform Jury Instruction supports this argument. Under Section 30–16–8, the question is whether there has been a conversion with fraudulent intent following an entrustment. Under Uniform Jury Instruction 14–1641, the question is whether there has been a conversion following an entrustment, and "conversion" is defined as keeping another's property or using it for one's own purpose rather than for the purpose intended by the owner. There is no exclu-

sion from entrustment for contraband or money used to obtain contraband, and there is no requirement that the state prove a defendant was in lawful possession.

Notwithstanding the foregoing, this appeal raises another issue, which is whether the fact that this case arises under the Children's Code requires a different result than this court reached in *Ortiz*. The Children's Code is "intended to protect children from the consequences of their own acts so long as it is 'consistent with the protection of the public interest.'" *State v. Favela*, 91 N.M. 476, 477, 576 P.2d 282, 283 (1978) (quoting NMSA 1953, § 13–14–2(B)), *overruled on other grounds by State v. Pitts*, 103 N.M. 778, 780, 714 P.2d 582, 584 (1986). Thus, we hold that this case presents additional policy concerns not present in *Ortiz*. After a remand for an evidentiary hearing, however, we conclude that the children's court order should be affirmed.

We think there are several specific policies underlying the Code that are relevant to this case. For example, the Code was enacted to "provide for the care, protection and wholesome mental and physical development of children." NMSA 1978, § 32–1–2(A) (Repl.Pamp.1989). Further, the Code was designed "to provide a program of supervision, care and rehabilitation." § 32–1–2(B); *see State v. Henry L.*, 109 N.M. 792, 791 P.2d 67 (Ct.App.1990). "A judgment in proceedings on a petition under the Children's Code shall not be deemed a conviction of crime...." NMSA 1978, § 32–1–33 (Repl.Pamp.1989). Finally, the Code was enacted "to provide effective deterrents to acts of juvenile delinquency." § 32–1–2(F).

■ Children on probation under the Children's Code, unlike adults, receive no credit for the time served on probation. *See Henry L.*, 109 N.M. at 794–95, 791 P.2d at 69–70. Jurisdiction obtained by the children's court over a child is retained until it is terminated by court order or automatically terminated by an event specified by statute. *See* NMSA 1978, § 32–1–12(A) (Repl.Pamp.1989).

■ The Juvenile Probation Agreement the child signed must be construed in light of the legislature's intent in enacting the Code and the nature of probation under the Code. In determining whether the child breached the agreement in this case, the children's court was entitled to take into account the child's reason for not making the purchase, as well as whether the officer who gave the child the money knew he was on probation.

■ The act underlying revocation of probation might have resulted from a decision not to purchase marijuana that was entirely consistent with the child's commitments to abide by state law and to avoid associating with those "who may be involved in any unlawful acts." If in refusing to purchase marijuana the child attempted to honor these commitments, in effect he would have made a decision not to breach the agreement. Under these circumstances, affirming the order revoking probation would be inconsistent with the purposes of the Children's Code. On such facts, it would be more appropriate to construe the agreement as honored. *See State v. Neal*, 680 S.W.2d 310, 314 (Mo.Ct.App.1984) ("Dealing or purporting to deal with an illegal substance ... might create more of an incentive for a change of mind."). At least one court has disapproved practices of drug enforcement agents who place a defendant in a "Catch–22" situation. *See United States v. Kelly*, 888 F.2d 732, 742 (11th Cir.1989) ("[W]e cannot accept the 'Catch–22' theory that [defendant], by refusing to aid or abet the transfer of the cocaine *out* of [his client's] possession (as the Government's sting operation intended), thereby criminally aided and abetted [his client's] *continued* possession.").

If the officer who gave the child sixty dollars to purchase marijuana knew he was on probation, the officer might have acted in a manner antithetical to the purposes of the Children's Code. *Cf.* NMSA 1978, § 30–6–3 (Cum.Supp.1991) (defining contributing to the delinquency of a minor, a fourth degree felony). Knowingly soliciting this particular child's participation in a

drug purchase arguably could be viewed as inconsistent with his "wholesome mental and physical development" and with "a program of supervision, care and rehabilitation." § 32–1–2(A), (B); *cf. State v. Sheetz*, 113 N.M. 324, 329, 825 P.2d 614, 619 (Ct.App.1991) ("[W]e do not believe that the war on drugs should be waged by creating more addicts....").

For these reasons, we initially proposed to conclude the state failed to prove a breach of the agreement that justifies revocation of the child's probation, and thus the state failed to make a sufficient showing to support the order revoking probation. *See generally* NMSA 1978, § 32–1–43 (Repl.Pamp.1989) (probation and parole revocation; disposition). Having come to a tentative resolution of this appeal, we ordered that a copy of the proposed disposition be served on the parties to the appeal and invited the state's response. The state's memorandum in opposition persuaded us that the propriety of the proposed disposition depended on facts not in the record. Accordingly, we remanded for an evidentiary hearing on the factual issues raised by the state's memorandum.

The children's court made findings and the clerk forwarded a supplemental record. The supplemental record contains an order dated June 28, 1991, after this case had been fully briefed but before it was submitted to a panel for decision, closing the case on the ground that "it is in the best interest of the child that the probationary supervision be terminated at this time." The order recites that it was entered pursuant to NMSA 1978, Section 32–1–38(D) (Repl.Pamp.1989), which states: "A child shall be released by an agency and probation ... shall be terminated by probation services ... when it appears that the purpose of the order has been achieved before the expiration of the period of the judgment." We believe that the decision to terminate probation is evidence that the disposition the children's court made after rendering judgment was in this child's best interest. We are not persuaded, however, that the appeal then became moot. *See* § 32–1–33 (disposition not admissible except in sentencing proceedings after conviction of a felony for purpose of a presentence study and report).

The findings made on remand provide no basis for a conclusion that the child made a decision not to commit a crime. Ordinarily, since a showing of a deliberate decision not to commit a crime is in the nature of an affirmative defense, we think the burden rested with the child to make that showing. The findings made on remand do establish that the officer who approached the child did not know he was on probation. Thus, the findings made on remand support a conclusion that the child breached the condition imposed by the agreement he signed in 1988 to abide by state law. He breached that agreement by the act of embezzlement he admitted. The record does not support any other construction of his act, nor on these facts is there a policy justification for excusing the act and setting aside the judgment.

We conclude on the basis of the supplemental record in this case that the order from which the child appealed should be affirmed. We expressly hold that once mandate issues from this court, the children's court's jurisdiction over the child with respect to the act for which his probation was revoked will have ended. *See* § 32–1–12(A). The order we have affirmed left the child on probation subject to conditions, but since his probation has been terminated, the conditions on which probation depended are no longer enforceable. Further, the child is now twenty. Therefore, the decision of the children's court is affirmed. The jurisdiction of the children's court over the child will terminate once mandate issues from this court.

IT IS SO ORDERED.

BIVINS and BLACK, JJ., concur.