864 P.2d 307

STATE of New Mexico,
Plaintiff–Appellee,

v.

Barbara McCOY, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Maria C. COURSEY, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Kenny HODGE, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

David URIAS, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Annette HALSEY, a/k/a Annette Bryant, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Orleana Fay STACY, Defendant–Appellant.

Nos. 13575, 14019, 14020, 14193, 14207 and 14230.

Court of Appeals of New Mexico.

May 19, 1993.

Certiorari Granted July 9, 1993.

Tom Udall, Atty. Gen., Joel Jacobsen, Bill Primm, Katherine Zinn, Gary Epler, and Matthew Ortiz, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Rita LaLUMIA, D. Scott Riedel, Bruce Rogoff, Sumita Mukhoty, Asst. Appellate Defenders, Santa Fe and Jonathan Miller, Albuquerque, for defendants-appellants.

## OPINION

FLORES, Judge.

This opinion discusses six appeals by six different Defendants who were convicted of possession of cocaine. Because the appeals raise similar substantive and procedural issues, we consolidate these appeals on our motion.

Except for Defendant Bryant, each Defendant was subjected to random urinalysis testing as a condition of probation or parole. Defendant Bryant was required to undergo urinalysis testing after probation authorities received an anonymous phone call informing them that Bryant had been using cocaine. Each Defendant tested positive for cocaine. On the basis of the urine test results, each Defendant was charged with possession of cocaine. Defendants McCoy, Hodge, Stacy, and Bryant each pled guilty. Defendant Coursey was con-

victed by jury. Defendant Urias was convicted at a bench trial.

All six Defendants raise different combinations of virtually identical substantive issues. Essentially, they argue that (1) the drug test results alone are insufficient evidence of possession, jurisdiction, knowledge, and intent; (2) the application of the possession statute to these Defendants is unconstitutional for vagueness and overbreadth, and because it constitutes cruel and unusual punishment; and (3) the random drug test results should have been suppressed as the fruit of unreasonable searches and seizures.

Because McCoy, Hodge, Stacy, and Bryant each pled guilty, their appeals also raise similar procedural issues. The State has moved to dismiss McCoy's appeal on procedural grounds, and has argued similar grounds for affirmance in its answer briefs in the appeals of Hodge, Stacy, and Bryant. Specifically, the State argues that (1) Defendants' objections never sought a ruling from the trial court and therefore were insufficient to preserve any issues for review; (2) the guilty pleas admitted all the facts in the criminal informations; (3) the guilty pleas waive any challenge to the sufficiency of the evidence; and (4) reservation of the right to appeal did not reserve the sufficiency of the evidence issues. We affirm the convictions of Defendants McCoy, Hodge, Stacy, and Bryant. We reverse the convictions of Defendants Coursey and Urias.

*DISCUSSION*

■ Initially, most of the Defendants argue that the State has attempted to charge them with something that is not a crime. Specifically, Defendants point out that many of the criminal informations charge "possession of cocaine to-wit: by consumption." We disagree with Defendants' arguments regarding characterization of the charging instruments. We believe the criminal informations charge the usual crime of possession of cocaine. The additional language concerning consumption is simply additional information provided by the State to show how it planned to prove possession. As we discuss below, proof of

consumption may prove possession in some cases but not others, depending on the individual circumstances and evidence. However, including the method of proof in the charging instrument does not change the basic charge of possession of cocaine that is made a crime pursuant to NMSA 1978, Section 30–31–23 (Cum.Supp.1992). *See* SCRA 1986, 5–205(A)(3) (Repl.1992) (means by which offense was committed is generally an unnecessary allegation); *State v. Lucero,* 79 N.M. 131, 132, 440 P.2d 806, 807 (Ct.App.1968) (unnecessary allegation may be disregarded as surplusage). Accordingly, we believe the criminal informations in these cases charge valid crimes under the laws of this state.

These cases raise issues of first impression in New Mexico concerning the State's ability to prove possession of cocaine based on urine samples that test positive for the presence of cocaine or its metabolites. Each appeal has different procedural or substantive facts that impact on the dispositions we reach. Therefore, for the sake of clarity, we first discuss the legal principles relevant to the issues presented by these appeals. We will then apply that law to the facts in each Defendant's appeal. We will then briefly address constitutional issues raised by some Defendants.

Defendants challenge the sufficiency of the evidence on a number of different grounds. First, they argue that the presence of cocaine in a urine test is insufficient proof of possession because each Defendant lacked the necessary degree of control over the drug. Second, Defendants argue the State lacked any proof of jurisdiction. Third, Defendants contend that proof of cocaine or its metabolites in a urine sample does not prove knowledge or intent to possess cocaine.

As the parties' briefs suggest, the starting point for Defendants' argument is *State v. Yanez,* 89 N.M. 397, 553 P.2d 252 (Ct.App.1976). In *Yanez,* the defendant was convicted of possession of morphine, largely on the basis of a positive urine test. The State argues that *Yanez* settles the question in New Mexico by allowing convictions for possession of a controlled sub-

stance on the basis of drug test results. However, as Defendants point out, in *Yanez* there was some additional significant corroborating evidence. In particular, the arresting officer saw the defendant participating in what appeared to be a drug transaction. He also saw the defendant purchase hypodermic needles at a drug store a short time later. Upon apprehending the defendant, the arresting officer noted fresh needle marks on the defendant's arm and a freshly used needle at the scene. The *Yanez* court relied on all of the above circumstances to hold that there was sufficient evidence of possession. *See id.* at 398, 553 P.2d at 253. *Cf. Green v. State*, 260 Ga. 625, 398 S.E.2d 360, 362 (1990) (positive drug test result merely circumstantial evidence of possession), *cert. denied*, 500 U.S. 935, 111 S.Ct. 2059, 114 L.Ed.2d 464 (1991); *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983). Thus, we agree with Defendants that *Yanez* is not dispositive on the issue of whether a positive drug test alone is sufficient evidence of possession.

### Possession/Control

■ Defendants' first argument is that the presence of cocaine or its metabolites within the body is insufficient proof of possession because once a drug is in the body a person does not have control over the drug, nor does a person have the power to produce or dispose of the drug. *See State v. Thronsen*, 809 P.2d 941 (Alaska Ct.App.1991); *Flinchpaugh*, 659 P.2d at 211; *State v. Lewis*, 394 N.W.2d 212 (Minn. Ct.App.1986); *State v. Downes*, 31 Or.App. 1183, 572 P.2d 1328 (1977); *State v. Hornaday*, 105 Wash.2d 120, 713 P.2d 71 (1986) (en banc). In addition, Defendants argue that once the drug is ingested, the harm which the legislature sought to prevent has passed, namely the distribution and transportation of controlled substances. *See Flinchpaugh*, 659 P.2d at 212–13; *Lewis*, 394 N.W.2d at 217.

The State argues that Defendants' interpretation of possession and control is too narrow. First, the State argues that all of the out-of-state cases which hold that there is no control over the drug are simply wrong. The State argues that the cases focus exclusively on future use and enjoyment of the drug and do not look at present use and enjoyment of the drug. Moreover, the State argues there is ample authority to suggest that the legislature was trying to prevent the harm which results from the use of drugs, not just drug distribution. *Cf. State v. Smith*, 94 N.M. 379, 610 P.2d 1208 (1980) (four separate drug trafficking convictions upheld against double jeopardy challenge, partly based on public policy of easing diagnosis and treatment of drug use).

As the State suggests, many of the New Mexico cases that define possession in terms of control are constructive possession cases where the defendant is not in the same physical location as the drugs. *See State v. Baca*, 87 N.M. 12, 528 P.2d 656 (Ct.App.), *cert. denied*, 87 N.M. 5, 528 P.2d 649 (1974); *State v. Bauske*, 86 N.M. 484, 525 P.2d 411 (Ct.App.1974). Also, it may be possible, as the State predicts, that by following the out-of-state cases that focus on the loss of control over the drug once it is in the body, people may be encouraged to simply consume their drugs to avoid prosecution. Nevertheless, we cannot ignore the definition of possession adopted by our Supreme Court or the numerous out-of-state cases that support Defendants' argument.

The definition of possession found in the definition section of the criminal uniform jury instructions, specifically, SCRA 1986, 14–130, provides that possession occurs when the thing possessed is "on" the person, not "in" the person. That instruction also provides that the person must exercise control over the thing possessed. Allowing the presence of drugs "in" the body to constitute possession would be contrary to our Supreme Court's definition of possession. *See State v. Jennings*, 102 N.M. 89, 691 P.2d 882 (Ct.App.) (Court of Appeals has no authority to set aside approved jury instructions), *cert. quashed*, 102 N.M. 88, 691 P.2d 881 (1984); *State v. Travarez*, 99 N.M. 309, 657 P.2d 636 (Ct.App.1983) (Court of Appeals must follow applicable Supreme Court precedents). Moreover, all

of the cases we have reviewed plainly hold that once the drug is ingested the person no longer exercises control over the drug and, therefore, does not possess the drug. *See Thronsen,* 809 P.2d at 942–43; *Flinchpaugh,* 659 P.2d at 211; *Lewis,* 394 N.W.2d at 217; *Downes,* 572 P.2d at 1330; *Hornaday,* 713 P.2d at 75. We are not persuaded that *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), requires a different result. In that case, the defendant swallowed balloons of drugs. Thus, although the drugs were inside of the defendant's body, they would ultimately be expelled in such a form that the defendant could use or sell them. They were under her control. Therefore, we believe the only way that a positive drug test is relevant to possession is as circumstantial evidence that the defendant possessed the drug at the time of ingestion. Indeed, we find that *Yanez* supports that conclusion. *Yanez,* 89 N.M. at 398, 553 P.2d at 253 (presence of drugs in the urine is circumstantial evidence that the defendant "had possessed" drugs).

## Jurisdiction

■ Defendants argue there is no proof of jurisdiction because a positive drug test does not reveal where the drugs were actually consumed. *See Green,* 398 S.E.2d at 362. Therefore, Defendants argue there is no proof that the drugs were consumed in the charged county or even within this state. *See State v. Benjamin C.,* 109 N.M. 67, 69, 781 P.2d 795, 797 (Ct.App.) (proof of where the defendant lives or is arrested is insufficient to prove offense was committed in the state), *cert. denied,* 109 N.M. 54, 781 P.2d 782 (1989); *State v. Losolla,* 84 N.M. 151, 152, 500 P.2d 436, 437 (Ct.App. 1972) (jurisdiction is an essential element of the offense charged). Defendants suggest that when people live so close to the border of another state, it is just as likely that such people consumed the drugs outside of this state and, therefore, outside the jurisdiction of our courts.

We believe that the State would be entitled to rely on circumstantial evidence to show jurisdiction in such cases. For example, we note that all of the Defendants were on probation or parole in these cases. A general condition of probation or parole agreements is that the probationer or parolee remain in this state. Evidence of such agreements could be circumstantial evidence from which it can be inferred that the ingestion of drugs occurred in this state.

## Knowledge and Intent

■ Although a positive drug test may be circumstantial evidence of possession, Defendants argue that a positive drug test standing alone does not prove that a defendant had knowledge of the drugs in his or her body or that a defendant intended to possess the drugs. *See State v. Vorm,* 570 N.E.2d 109, 110–11 (Ind.Ct.App.1991); *Flinchpaugh,* 659 P.2d at 211–12; *Lewis,* 394 N.W.2d at 214–15. As the above cases all note, it is quite possible that a defendant may have involuntarily ingested the drugs either through coercion, deception, or second-hand smoke. Accordingly, without some corroborating proof of knowledge and intent, the cases have uniformly held that a positive drug test alone does not prove a defendant's knowledge of the drug or intent to possess it.

The State argues that knowledge and intent can be properly inferred from the positive drug test because the drug test is circumstantial evidence of possession. *See Yanez,* 89 N.M. at 398, 553 P.2d at 253. The State contends that because a positive drug test is circumstantial evidence of possession, the State has succeeded in establishing a prima facie case of possession of a controlled substance. *See State v. Bejar,* 101 N.M. 190, 679 P.2d 1288 (Ct.App.) (circumstantial evidence is sufficient to establish corpus delicti of a crime), *cert. denied,* 101 N.M. 189, 679 P.2d 1287 (1984). Accordingly, the State suggests that if there is any doubt as to knowledge or intent it is up to the defendant to rebut the prima facie case with some evidence that the drug was involuntarily or unknowingly introduced into the defendant's body through deception or coercion.

Despite the State's urging to the contrary, the majority of cases holds that a drug test alone is insufficient proof of knowledge or intent. Moreover, we believe the State's argument impermissibly shifts the burden of proof to Defendants. In our view, it would be difficult if not impossible for a defendant to present credible evidence that he or she ingested drugs unknowingly. Although it may be just as difficult for the State to show a lack of deception, coercion, or involuntary consumption, we believe it is the State that should shoulder that burden of proof if it chooses to rely principally on a positive drug test to prosecute a defendant for possession of cocaine.

Therefore, we do not believe the drug test alone proves knowledge or intent. Accordingly, we adopt the majority rule that requires additional proof of intentional or knowing prior possession, corroborating the positive drug test, before a defendant can be charged and convicted of possession of a controlled substance. *See Vorm,* 570 N.E.2d at 110–11; *Flinchpaugh,* 659 P.2d at 211–12; *Lewis,* 394 N.W.2d at 217. In adopting the majority view, we do not rule out the possibility of scientific or other evidence that would permit a reasonable inference to be drawn that from the type of drug, the amount found in the accused's system, the accused's physical condition, and other relevant factors, the accused would have had the requisite knowledge and intent to possess the drug. That question is not before us today because most of the cases are presented to us as cases in which the State relied solely on the urinalysis tests to prove possession. To the extent that Defendant Coursey's case contains one additional item of evidence, we address that item below.

### Defendant Coursey

█ Defendant Coursey was convicted, by a jury, of possession of cocaine. The only evidence relied upon to prove that Coursey possessed cocaine was a positive drug test conducted pursuant to one of the conditions of Coursey's probation. Expert testimony established that the concentration of cocaine in the urine was so high that it must have been ingested within six to eight hours of the test. Although Coursey admitted to a prior conviction for cocaine, there was no corroborating evidence surrounding the ingestion of cocaine on this occasion. As we discussed above, while the positive drug test might be circumstantial evidence of possession, it is insufficient, standing alone, to convict for that crime. Nor do we believe that the addition of the expert testimony adds enough to the evidence to show knowledge and intent. It simply establishes the time at which the drugs were ingested. Accordingly, we reverse Defendant Coursey's conviction. In light of our disposition, we need not address Coursey's remaining arguments on appeal.

### Defendant Urias

█ Defendant Urias was convicted, pursuant to a bench trial, of possession of cocaine. Urias and the State stipulated that Urias was seen in Odessa, Texas, on September 6, 1991, and some time between September 8, 1991, and September 12, 1991. The parties further stipulated that on September 13, 1991, Urias gave a urine sample, that the sample tested positive for cocaine, and that based on the test results the cocaine must have been ingested within three days of the date the sample was taken. The trial court found that there was insufficient evidence to determine whether the ingestion occurred within New Mexico. The trial court seemed to be of the opinion that Defendant Urias' positive test within the state, regardless of where actual ingestion took place, was sufficient evidence of jurisdiction.

We find the trial court's finding that there was insufficient evidence to prove the ingestion of cocaine occurred in New Mexico dispositive in this case. As we discussed above, the mere presence of drugs in the urine or bloodstream does not constitute possession. *See Thronsen,* 809 P.2d at 942–43; *Flinchpaugh,* 659 P.2d at 211; *Lewis,* 394 N.W.2d at 217; *Downes,* 572 P.2d at 1330; *Hornaday,* 713 P.2d at 75. Since there is insufficient evidence to prove

that the drugs were actually ingested in New Mexico, we do not believe there is sufficient evidence of jurisdiction in this case. *See Benjamin C.*, 109 N.M. at 69, 781 P.2d at 797; *Losolla*, 84 N.M. at 152, 500 P.2d at 437. Therefore, Defendant Urias' conviction is reversed. We need not address Urias' remaining issues.

### Defendant McCoy

■ Relying on case law from this state and other jurisdictions, the State argues that Defendant McCoy's guilty plea waived all challenges to the sufficiency of the evidence. *See United States v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 763, 102 L.Ed.2d 927 (1989) ("By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."); *State v. Bonney*, 82 N.M. 508, 484 P.2d 350 (Ct.App.1971). The State further argues that sufficiency of the evidence within the context of a guilty plea is not a jurisdictional issue. *See United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir.1986). In addition, the State refers to recent opinions by our Supreme Court that suggest that jurisdictional error should be narrowly construed. *See State v. Orosco*, 113 N.M. 780, 783, 833 P.2d 1146, 1149 (1992) ("it is inappropriate to equate jurisdictional error with other instances in which an error may be raised for the first time on appeal"); *Sundance Mechanical & Util. Corp. v. Atlas*, 109 N.M. 683, 687, 789 P.2d 1250, 1254 (1990) (jurisdiction depends on whether the court had power to enter upon the inquiry not whether its conclusion was right or wrong).

Defendant McCoy readily concedes that she did not raise a sufficiency of the evidence issue below. However, she frames the issue somewhat differently. She contends that she pled to something that is not a crime and, therefore, she is not precluded from raising such a jurisdictional defect that goes to the very power of the State to bring her into court to answer the charge brought against her. *See United States v. Barboa*, 777 F.2d 1420 (10th Cir.1985); *State v. Fabre*, 525 So.2d 1222, 1224 (La.Ct.

App.) (guilty plea does not bar a defendant from raising jurisdictional defect on the face of the pleadings or proceedings), *cert. denied*, 532 So.2d 148 (1988). However, as we discussed above, we believe the State was merely charging the usual crime of possession of cocaine not some new crime of possession by consumption. Therefore, since Defendant McCoy's guilty plea waived her challenge to the sufficiency of the evidence, we do not address those arguments on appeal. *See In re Danny R.*, 114 N.M. 315, 317, 838 P.2d 469, 471 (Ct.App.), *cert. denied*, 114 N.M. 123, 835 P.2d 839 (1992). Moreover, Defendant McCoy expressly asked the trial court if she could preserve an issue related to an unconstitutional application of the statute to what is essentially an addiction. We answer that issue specifically on its merits later in this opinion. However, that issue is not a general insufficiency of the evidence issue, such as McCoy has argued in her brief.

■ Defendant McCoy also argues that if this Court finds that her guilty plea waived her right to challenge the sufficiency of the evidence, then her trial counsel was ineffective. However, as the State points out, there may have been strategic reasons for defense counsel's recommendation of a guilty plea. As the State notes, a ruling that there is insufficient evidence in these cases is unanswered in New Mexico and arguably supported by *Yanez*. Despite supporting authority from other jurisdictions, the State asserts that defense counsel could have reasonably and competently believed that the benefits of a guilty plea would outweigh the likelihood that Defendant could successfully argue on appeal that no offense was committed. Defense counsel may also have known that the State could have presented expert testimony that would allow inferences to be drawn to support the idea that Defendant McCoy knowingly ingested the drugs. Since the decision to plea bargain in this case could have been a strategic decision, we do not believe an ineffective assistance of counsel claim is viable. *See State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct.App.) (appellate court will not attempt to second-guess trial counsel with respect to strategy

and tactics), *certs. denied*, 104 N.M. 702, 726 P.2d 856 (1986).

Defendant McCoy further argues that her defense counsel was ineffective for failing to move to suppress the drug test results as the fruit of an unreasonable search and seizure. However, as we discuss below in our analysis of Defendant Hodge's appeal, we do not believe the *drug* test results were subject to suppression. Therefore, lacking any prejudice from a failure to move to suppress, Defendant McCoy's ineffective assistance of counsel claim on this point must also fail. *See id.* at 8, 727 P.2d at 947 (the defendant must show prejudice to support claim of ineffective assistance of counsel).

*Defendant Hodge*

Defendant Hodge seems to acknowledge that a guilty plea generally waives any challenge to the sufficiency of the evidence. However, he contends that he reserved the right to appeal the sufficiency of the evidence issue. In particular, he points to a comment his defense counsel made where he said "can we agree on the record today that in the event the Court of Appeals determines that the ingestion of cocaine cannot result in ... a possession charge that we can go back into the record and ... wipe out that charge and the conviction?"

The State contends those remarks were inadequate to reserve the issue for appeal because the comments were made after the court had accepted the plea agreement. We agree that the remarks made at the plea hearing were insufficient to raise and preserve a challenge to the sufficiency of the evidence. While the parties may have stipulated to some facts for purposes of appeal, we believe that was an inappropriate method for addressing such an issue. In essence, Defendant Hodge was trying to have the trial court accept a stipulation on a factual question for purposes of appellate review without undergoing an actual trial. We find such actions insufficient for addressing a challenge to the sufficiency of the evidence. *Cf. State v. Masters*, 99 N.M. 58, 653 P.2d 889 (Ct.App.1982); *State*

*v. Mares*, 92 N.M. 687, 594 P.2d 347 (Ct. App.) (error to decide in advance of trial the facts of the crime), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979). Instead, we believe the proper route would have been for the parties to have stipulated to the facts and allowed the trial court to adjudicate guilt or innocence by way of a bench trial. Since that was not done, we are compelled to hold that Defendant is procedurally barred from raising the sufficiency issue on appeal in light of his guilty plea. *See Bonney*, 82 N.M. at 508, 484 P.2d at 350.

Like Defendant McCoy, Defendant Hodge also argues that his trial counsel was ineffective for allowing him to plead guilty if, by so pleading, he waived the sufficiency of the evidence issue on appeal. However, as we said above, the decision to recommend a plea bargain is a matter of strategy that we will not second-guess on appeal. *See Dean*, 105 N.M. at 8, 727 P.2d at 947 (appellate court will not attempt to second-guess trial counsel with respect to strategy and tactics).

Defendant Hodge contends that the results of the random urinalysis testing should have been suppressed as the fruit of an unreasonable search and seizure. He bases his argument on the assumption that the drug testing was not reasonably related to the rehabilitative purposes of his probation. The essence of his argument is that the drug testing was not reasonably related to the rehabilitation for his past crimes, to wit, property offenses. *See State v. Gardner*, 95 N.M. 171, 619 P.2d 847 (Ct.App.1980).

In *State v. Donaldson*, 100 N.M. 111, 119–20, 666 P.2d 1258, 1266–67 (Ct.App.), *cert. denied*, 100 N.M. 53, 665 P.2d 809 (1983), this Court established a three-part test for determining if a probation condition is reasonably related to the probationer's rehabilitation. In short, the trial court's discretion in imposing probation conditions will not be disturbed unless (1) the condition has no reasonable relationship to the offense for which the defendant was convicted; (2) the condition relates to

activity which is not itself criminal in nature; and (3) the condition requires or forbids conduct which is not reasonably related to deterring future criminality. *Id.* As the State points out, random urinalysis is related to drug use activity which is itself criminal. Moreover, the testing is reasonably related to deterring future criminality in the form of illegal drug use. Therefore, because Defendant Hodge cannot satisfy at least two of the three prongs of the *Donaldson* test, the trial court did not abuse its discretion in imposing random urinalysis as a condition of probation. Therefore, it follows that the results of those drug tests would not be subject to suppression as the fruit of an unreasonable search and seizure.

### Defendant Stacy and Defendant Bryant

As with Defendant Hodge, the guilty pleas of Defendant Stacy and Defendant Bryant preclude them from raising any challenge to the sufficiency of the evidence. *See Bonney,* 82 N.M. at 508, 484 P.2d at 350. Defendant Stacy suggests that trial counsel's only strategy for recommending a plea bargain was the ability to stipulate to the facts and challenge the sufficiency of the evidence on appeal. However, we do not find the record dispositive on this point. Moreover, we have already stated with respect to Defendant Hodge that we find such a procedure unacceptable. We would note that this opinion is not intended to preclude any of Defendants from pursuing appropriate post-conviction relief, pursuant to SCRA 1986, 5–802 (Repl.1992), if their guilty pleas have foreclosed the raising of meritorious issues on direct appeal. *See State v. Powers,* 111 N.M. 10, 800 P.2d 1067 (Ct.App.) (inquiries into trial counsel's reasons for taking certain actions are matters more appropriately addressed in a post-conviction hearing), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990); *State v. Stenz,* 109 N.M. 536, 787 P.2d 455 (Ct.App.), *cert. denied,* 109 N.M. 562, 787 P.2d 842 (1990).

### Constitutional Issues

Defendant Hodge makes three arguments to suggest that the application of the possession statute to these Defendants was unconstitutional. First, he argues the statute is vague or in violation of due process. Second, he argues the statute is unconstitutionally overbroad. Third, he argues the application of the statute to him constitutes cruel and unusual punishment. Defendants McCoy and Bryant also argue their convictions constitute cruel and unusual punishment.

### A. Vagueness/Due Process

Defendant Hodge argues that the statute is unconstitutionally vague because a person of ordinary intelligence would not know that the consumption of a controlled substance constitutes possession of the controlled substance. *See State v. Gattis,* 105 N.M. 194, 730 P.2d 497 (Ct.App.1986). We disagree. We have acknowledged that a positive drug test does not prove on its own that someone voluntarily consumed cocaine. However, we disagree that a person of ordinary intelligence would not know that by knowingly and voluntarily consuming a drug he or she was also possessing a drug. Plainly, the act of voluntary consumption necessarily involves the act of possession. Thus, we do not believe the possession statute is vague because a person of ordinary intelligence would know that he or she is possessing a drug when he or she is consuming it. *See id.* at 197, 730 P.2d at 500; *State v. Rogers,* 94 N.M. 527, 529, 612 P.2d 1338, 1340 (Ct.App.) ("legislature is not required to write statutes for the understanding of persons who cannot or will not apply ordinary meanings to plain words"), *cert. denied,* 94 N.M. 629, 614 P.2d 546 (1980).

### B. Overbreadth

Defendant Hodge seems to make the same argument he raises concerning cruel and unusual punishment. To that extent, we refer to our comments below on that issue. Moreover, as the State points out, the consumption of illegal narcotics is not constitutionally protected conduct

which the overbreadth doctrine is designed to protect. *See Gattis*, 105 N.M. at 198–99, 730 P.2d at 501–02.

### C. Cruel and Unusual Punishment

 Relying on United States Supreme Court precedent, Defendants argue that punishment for possession of cocaine on the basis of a positive drug test constitutes cruel and unusual punishment because a person would be punished solely on the basis of drug use. *See Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, *reh'g denied*, 371 U.S. 905, 83 S.Ct. 202, 9 L.Ed.2d 166 (1962); *Jackson v. State*, 833 S.W.2d 220 (Tex.Ct.App.1992). *Robinson* and its progeny make it impermissible to convict a person solely because of his or her status as an addict. However, *Robinson* makes it clear that the State is well within its authority to punish for the use of controlled substances. Therefore, contrary to Defendants' position, it is permissible for the State to punish someone for the actual use of cocaine. Furthermore, as the State points out, none of these Defendants has claimed to be a drug addict. Therefore, the *Robinson* line of cases is inapplicable to these Defendants.

### CONCLUSION

For the foregoing reasons, we affirm the convictions of Defendants McCoy, Hodge, Stacy, and Bryant. We reverse the convictions of Defendants Coursey and Urias.

IT IS SO ORDERED.

BIVINS and PICKARD, JJ., concur.