881 P.2d 57

STATE of New Mexico,
Plaintiff–Appellee,

v.

Donnie RICKARD, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Charlene JONES, a/k/a Charlene Frazier,
Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Bonnie Ray WRIGHTER,
Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Patricia PRICE, Defendant–Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Donald Ray WOODS, Defendant–
Appellant.

Nos. 14566, 14591, 14503, 14458 and 14866.

Court of Appeals of New Mexico.

June 24, 1994.

Certiorari Granted Aug. 15, 1994.*

* Certiorari was not granted for Woods, only for the other four defendants.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, attorneys for plaintiff-appellee in No. 14566.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Asst. Appellate Defender, Santa Fe, attorneys for defendant-appellant in No. 14566.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, attorneys for plaintiff-appellee in No. 14591.

Sammy J. Quintana, Chief Public Defender, Rita LaLumia, Asst. Appellate Defender, Santa Fe, attorneys for defendant-appellant in Nos. 14591, 14503 and 14458.

Tom Udall, Atty. Gen., Ann M. Harvey, Asst. Atty. Gen., Santa Fe, attorneys for plaintiff-appellee in No. 14503.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, attorneys for plaintiff-appellee in No. 14458.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, attorneys for plaintiff-appellee in No. 14866.

John H. Tull, Jr., Tull & Cherry, Santa Fe, attorneys for defendant-appellant in No. 14866.

*OPINION*

FLORES, Judge.

This opinion addresses five appeals by five Defendants who were convicted of possession of cocaine. Each Defendant was subjected to random urinalysis testing as a condition of probation or parole and tested positive for the presence of cocaine. Subsequently, each Defendant was charged and prosecuted for possession of cocaine. Because Defendants challenge whether their urine test results were privileged information improperly disclosed to law enforcement officials, we consolidate these appeals on our own motion to discuss the question of privilege. Further, on our own motion, *State v. Wrighter,* No. 14,503 is severed from *State v. Roberts,* No. 14,757 and *State v. Dean,* No. 14,732. We will also briefly address other issues raised by Defendants. Any issues listed in any Defendant's docketing statement which have not been briefed are deemed abandoned. *State v. Ramos,* 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.), *cert. denied,* 115 N.M. 602, 856 P.2d 250 (1993). We affirm all convictions.

## I. PRIVILEGED PROBATION REC-ORDS

Defendants argue that their drug test results should not have been used to prosecute them for possession of cocaine because disclosure of the drug test results violates the privilege against disclosure found in NMSA 1978, Section 31–21–6 (Repl.Pamp.1990). We assume, without deciding, that a privilege against disclosure would not be unconstitutional. *Compare Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976) *with Southwest Community Health Servs. v. Smith,* 107 N.M. 196, 755 P.2d 40 (1988). Additionally, for purposes of this opinion, we treat Defendants as the holders of the privilege although, based on the language of the statute, we are not certain

that Defendants may claim the privilege under Section 31–21–6. Nevertheless, we do not believe the privilege described in Section 31–21–6 applies in these cases.

Section 31–21–6 provides that:

> [a]ll social records, including presentence reports, pre-parole reports and supervision histories, obtained by the [probation and parole] board are privileged and shall not be disclosed directly or indirectly to anyone other than the board, director, sentencing guidelines commission or sentencing judge....

As Defendants and the State recognize, central to the resolution of this issue is whether Defendants' drug test results are "social records" within the meaning of Section 31–21–6. Preliminarily, it may seem that drug test results obtained as a result of a condition of probation may fall within the general term "social records." However, we are influenced by the types of "social records" listed in Section 31–21–6 to conclude that the drug test results in these cases are not "social records." *See State ex rel. Murphy v. Morley,* 63 N.M. 267, 270, 317 P.2d 317, 319 (1957) ("'general terms in a statute may be regarded as limited by subsequent more specific terms'" (quoting 50 Am.Jur. *Statutes* § 249, at 244 (1944))).

In particular, Section 31–21–6 lists presentence reports, pre-parole reports, and supervision histories as types of "social records." We agree with the State that the specific types of social records listed in Section 31–21–6 indicate that the legislature intended "social records" to refer to the types of personal observations, sensitive data, and recommendations that probation and parole officers use to inform the probation and parole board or sentencing judge regarding whether to grant parole or probation. The State also correctly points out that prior case law has recognized that among the duties of a parole or probation officer is the duty to write social reports and investigative reports. *See Vigil v. Martinez,* 113 N.M. 714, 719, 832 P.2d 405, 410 (Ct.App.1992). We believe the drug test results at issue in this case are more akin to investigative reports than social records.

Thus, the privilege set forth in Section 31-21-6 is inapplicable in these cases.

We recognize that the express purpose of the Parole and Probation Act is to promote constructive rehabilitation, and that the Act should be liberally construed to that end. *See* NMSA 1978, § 31-21-4 (Repl. Pamp.1990). However, other reasons exist for keeping the social records of the Probation and Parole Board confidential. Some of those reasons are set forth in *State v. Haar*, 94 N.M. 539, 541, 612 P.2d 1350, 1352 (Ct. App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980), and include uniformity and equality in sentencing. As Section 31-21-6 expressly indicates and as *Haar* alludes to, the information is sometimes kept from the probationer or parolee. Thus, another purpose of the statute is to encourage the full and frank exchange of information between people who may be responsible for dispositional orders regarding probationers and parolees.

Moreover, we doubt that allowing disclosure of the drug test results at issue in this case would discourage constructive rehabilitation. It may be true that probationers and parolees would be reluctant to speak with probation and parole officers if they knew that their statements coupled with a positive drug test could be grounds for a criminal prosecution. But at the same time, that awareness may deter probationers and parolees from engaging in illegal drug use. *See State v. McCoy*, 116 N.M. 491, 500, 864 P.2d 307, 316 (Ct.App.) (random drug testing as a condition of probation is reasonably related to deterring future criminal conduct), *cert. granted* (N.M. July 9, 1993) (No. 21,-310). On balance, we do not believe that allowing the disclosure of drug test results for purposes of criminal prosecution would defeat the goal of constructive rehabilitation because the threat of criminal prosecution may actually deter parolees and probationers from engaging in illegal activity that certainly makes a constructive rehabilitation less likely.

Some Defendants argue that cooperation between the police and probation and parole officers should not be permitted to make the probation and parole system " 'a subterfuge for criminal investigations.' " *See* 4 Wayne R. LaFave, *Search and Seizure* § 10.10(e), at 157 n. 120 (2d ed. 1987) (quoting *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 267 (9th Cir.1975) (quoting *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975))). We first point out that Defendants have offered no evidence that the probation and parole officers or agencies involved in these cases were acting as a subterfuge for criminal investigations. Moreover, this opinion should not be construed to encourage such an arrangement between law enforcement agencies and the probation and parole system in this State. However, even if there was cooperation between law enforcement agencies and probation and parole officers in these cases, we do not believe that cooperation was improper because the drug tests in these cases were carried out as a preexisting probation or parole condition. *See State v. Gardner*, 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App.) (fact that there was cooperation between police and probation officer did not make search illegal because search was requested by probation officer), *cert. denied* (N.M. Oct. 6, 1980).

For all of the foregoing reasons, we hold that Defendants' drug test results are not privileged information within the scope of Section 31-21-6. To the extent that some Defendants argue their trial counsels were ineffective for failing to assert the privilege below, we find the claim of ineffective assistance of counsel without merit for lack of prejudice. *See State v. Gonzales*, 113 N.M. 221, 229-30, 824 P.2d 1023, 1031-32 (1992) (ineffective assistance of counsel claim must fail if defendant cannot show prejudice). Because we hold there is no privilege, there is no prejudice.

## II. SUFFICIENCY OF THE EVIDENCE

Defendants Rickard, Jones, Wrighter, and Price argue that their convictions are not supported by sufficient evidence. Although Defendant Woods also appears to be arguing insufficiency of evidence, he actually raises an admissibility issue that we will deal with later in this opinion. However, by pleading guilty, some Defendants

waived review of their claims of insufficient evidence. *See McCoy*, 116 N.M. at 498, 864 P.2d at 314 ("guilty plea waived ... challenge to the sufficiency of the evidence"). With respect to Defendant Wrighter who pled no contest, we believe the same rationale applies. Nevertheless, some Defendants contend that they did not waive a claim of insufficient evidence by pleading guilty because they entered their guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Defendants suggest that an *Alford* plea automatically reserves the right to challenge the sufficiency of the evidence supporting the plea on appeal. We disagree with Defendants' interpretation of *Alford*.

*Alford* simply established the principle that a trial court has the power to accept a defendant's guilty plea even if the defendant is still maintaining his innocence while pleading guilty. *See id.* at 37–38, 91 S.Ct. at 167–68. Because *Alford* noted that there was a strong factual indication of guilt in that case, Defendants seem to maintain that an *Alford* plea inherently allows a defendant to challenge the sufficiency of the factual showing of guilt that was presented to the trial court. We disagree.

*Alford* does envision the trial court making some sort of determination that there is a factual showing of guilt before accepting a guilty plea from a defendant who is maintaining his innocence. *See id.* However, nothing in *Alford* alters the usual rule that a guilty plea waives all challenges to the sufficiency of the evidence, and nothing in *Alford* indicates that a plea must be set aside on direct appeal if the record does not indicate the state's offering of evidence of proof beyond a reasonable doubt on each essential element of a crime. Moreover, in these cases the trial court determined that the positive drug tests made a prima facie case of possession of cocaine. Even though our subsequent decision in *McCoy* held that a drug test alone is insufficient evidence of possession of cocaine, *McCoy* also indicated that some amount of corroborative evidence in addition to the drug test could suffice to support a conviction for possession of cocaine. 116 N.M. at 497, 864 P.2d at 313.

Although in most of the cases the State did not tender corroborative evidence to support the positive drug tests, we do not believe that should allow Defendants to escape the consequences of their guilty pleas.

■ As we alluded to in *McCoy*, there may well have been other corroborative evidence that the State could have marshalled in support of the drug tests if Defendants had chosen to make the State prove its cases by trial to the bench or jury. However, Defendants chose instead to plead guilty. Consequently, Defendants cannot now take advantage of the fact that the State was not required to make the fullest factual showing possible since Defendants chose to plead guilty. *See McCoy*, 116 N.M. at 499, 864 P.2d at 315 (stipulating to factual questions without undergoing actual trial is insufficient for addressing sufficiency of the evidence on appeal).

■ Some Defendants also argue that if their guilty pleas waived their right to challenge the sufficiency of the evidence, then they should be allowed to withdraw their guilty pleas because they were not voluntarily and knowingly made. However, claims of an involuntary and unknowing plea involve matters for which a record has not been adequately developed, and thus it cannot be raised for the first time on appeal. *See State v. Vigil*, 85 N.M. 328, 332–33, 512 P.2d 88, 92–93 (Ct.App.1973). Instead, a request to withdraw a plea should be raised in a postconviction proceeding, *see State v. Martinez*, 84 N.M. 766, 767, 508 P.2d 36, 37 (Ct.App. 1973), and nothing in this opinion should be construed to preclude Defendants from seeking post-conviction relief. But on direct appeal, we hold that Defendants' guilty pleas preclude them from raising challenges to the sufficiency of the evidence. *See McCoy*, 116 N.M. at 498, 864 P.2d at 314.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Anticipating that this Court would rule that their sufficiency issues were waived by their guilty pleas, Defendants Rickard, Jones, and Price argue that their defense counsels provided ineffective assistance of counsel by advising them to plead guilty.

*McCoy* held that, because a plea agreement could constitute strategy and tactics, an ineffective assistance claim is not viable on direct appeal. *Id. McCoy* recognizes that pleading guilty and challenging the sufficiency of the evidence are inconsistent actions. But even if defense counsel intended to reserve the sufficiency issues, that does not make the recommendation to plead guilty any less of a tactical decision in light of the uncertainty of Defendant's arguments prior to our decision in *McCoy,* and in light of the potential benefits from a plea bargain. *See id.* Without a record to establish defense counsels' reasons for suggesting plea agreements, this issue is not viable on direct appeal. *See id.*

## IV. UNREASONABLE SEARCH AND SEIZURE

 Defendants Rickard, Jones, and Price contend that the random urine tests they were subjected to as a condition of probation constitute unreasonable searches and seizures. This Court has previously held that such random drug tests do not constitute unreasonable searches and seizures. *See id.* at 500, 864 P.2d at 316 (Because random drug tests are related to drug use activity which is criminal and because the testing is reasonably related to deterring future criminality, "the results of those drug tests would not be subject to suppression as the fruit of an unreasonable search and seizure."). We see no reason to revisit this issue now.

Several Defendants also raise issues unique to their individual appeals. We will now address those issues.

## V. DEFENDANT JONES

 Defendant Jones contends her trial counsel was ineffective for failing to move to suppress an admission she made to her parole officer that she ingested cocaine. Defendant Jones suggests that the incriminating statement was inadmissible because she was not given her *Miranda (Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warnings before making the statement. However, as the State points out, Defendant Jones did not raise this issue below. Consequently, there is no record con-

cerning whether the *Miranda* warnings were given. This Court cannot consider matters outside of the record. *See State v. Martin,* 101 N.M. 595, 603, 686 P.2d 937, 945 (1984). And without a record, this Court cannot consider Defendant Jones' claim of ineffective assistance of counsel on direct appeal. *See State v. Powers,* 111 N.M. 10, 12, 800 P.2d 1067, 1069 (Ct.App.), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990). Instead, Defendant's proper avenue of relief is a post-conviction proceeding where a proper record can be developed. *See id.*

## VI. DEFENDANT WRIGHTER

Defendant Wrighter argues that punishment for possession of cocaine based solely on a positive drug test constitutes cruel and unusual punishment. We rejected a similar argument in *McCoy* and decline to revisit the issue now. 116 N.M. at 501, 864 P.2d at 317.

## VII. DEFENDANT WOODS

### A. Confession

 Defendant Woods contends his trial counsel was ineffective for failing to move to suppress his confession because the confession was obtained by using privileged information under Section 31–21–6. As we stated above, the drug test results are not privileged information within the meaning of Section 31–21–6. Consequently, Defendant's confession could not have been suppressed as the fruit of improperly disclosed privileged information. Lacking prejudice, Defendant's claim of ineffective assistance of counsel must fail. *See Gonzales,* 113 N.M. at 229–30, 824 P.2d at 1031–32.

### B. Chain of Custody

 Defendant, although labeling his argument as one of sufficiency of the evidence, contends the trial court abused its discretion in admitting Defendant Woods' urine sample because an adequate chain of custody was not proven by the State. However, Defendant Woods did not object to the admission of the urine sample at the time the State offered it into evidence. Under those circumstances, we do not believe Defendant Woods has preserved this issue for appeal.

*See State v. Lopez,* 105 N.M. 538, 544, 734 P.2d 778, 784 (Ct.App.1986) (to preserve claim that evidence was erroneously admitted defendant must make a timely objection), *cert. quashed,* 105 N.M. 521, 734 P.2d 761, *and cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). During his argument on motion for directed verdict, within the context of arguing that there was insufficient evidence to convict, Defendant Woods did argue that the chain of custody was inadequately proven. Even if it could be said this indicates preservation, nevertheless Defendant Woods, on appeal, has not challenged the sufficiency of the evidence, but rather its admissibility. Failing to challenge the admissibility of the urine sample in a timely fashion below, Defendant Woods is precluded from doing so on appeal. *See id.*

## VIII. CONCLUSION

Based on the foregoing, Defendants' convictions are affirmed.

**IT IS SO ORDERED.**

BIVINS and PICKARD, JJ., concur.