# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-002

Filing Date: August 27, 2020

No. A-1-CA-37226

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTHONY PAMPHILLE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Certiorari Denied, October 9, 2020, No. S-1-SC-38498. Released for Publication March 9, 2021.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

for Appellant

## OPINION

**MEDINA, Judge.**

**{1}** Defendant Anthony Pamphille appeals from his convictions for arson, contrary to NMSA 1978, Section 30-17-5(A) (2006), breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981), and violating an order of protection, contrary to NMSA 1978, Section 40-13-6 (2013). We affirm.

## BACKGROUND

**{2}**     J.M. (Victim) had an "on-again-off-again" relationship with Defendant, the father of one of her children. In early March 2017, Victim decided to separate from Defendant and told him he was no longer welcome in her home. Despite this, Defendant kept returning to Victim's house. Defendant had a set of keys to Victim's house, and Victim suspected he was using those keys to enter the house and take her belongings. As a result, Victim had her landlord change the locks, although she was concerned this could anger Defendant.

**{3}**     One night in early March—after Victim's landlord changed the locks—Victim opened her eyes and discovered Defendant kneeling down at the foot of her bed. Victim asked Defendant what he was doing in her home and told him he needed to leave. Defendant complied, but Victim soon realized that Defendant took her cellphone when he left. Victim believed that Defendant took her cellphone to read her text messages because he had a "jealous streak" and thought she was talking to another man. Victim believed Defendant had snuck in through a window in her daughter's bedroom because Victim had locked her doors before going to sleep and later discovered the window open. She reported the incident to her landlord, who screwed her daughter's window shut. This was not the first time someone broke into Victim's house. Prior to that incident, someone broke Victim's bedroom window on one occasion and her daughter's bedroom window on another.

**{4}**     Victim had additional run-ins with Defendant and an unwelcome entry into her home during the month of March. On March 12, 2017, Victim called the police after Defendant showed up unannounced at her house. Two days earlier Victim obtained a temporary order of protection from Defendant prohibiting him from coming within one hundred yards of Victim's house. On the evening of March 17, 2017, Victim discovered a pot full of an unknown liquid on her stove. The liquid smelled like gas, and Victim suspected it was tiki torch oil that she kept under her kitchen sink. All the doors were locked at the time, although Victim's daughter's bedroom window had not yet been secured. Victim did not know who put the pot on the stove.

**{5}**     On March 18, 2017, Victim again had to call the police after Defendant appeared and knocked on the front door of the house while Victim was present. Following a hearing on March 22, 2017, at which Defendant was present, Victim obtained a permanent order of protection against Defendant prohibiting him from coming within one hundred yards of her house.

**{6}**     The morning of March 25, 2017, Victim had her landlord's brother come to the house to secure the windows in her and her daughter's bedrooms by screwing the windows shut, because while fixing the window in her bedroom that had been broken a couple of weeks prior, the landlord noticed that the windows were not secure. That same night, police and firefighters responded to reports of a fire at Victim's house. After putting out the fire—which caused over $100,000 worth of damage—investigators discovered one of Victim's windows had been shattered, and found a pair of pliers and pruning shears below the broken window, which appeared to have dried blood on them. The blood was later tested and confirmed to be Defendant's. Victim did not notice any

broken glass or tools below her window when she watched the window being secured earlier that day, nor did she recognize the pliers and pruning shears.

{7}     Investigators concluded that someone intentionally set the house on fire because the fire had multiple points of origin—including a kitchen fire caused by aerosol cans being placed in Victim's oven—and there was no evidence indicating accidental causes. The investigators also suspected that the arsonist entered the house through the shattered window, as both the front and back doors had to be forced open when responding to the fire.

{8}     While nobody witnessed the arson, Victim's neighbor dropped off a fellow neighbor, Michael Vaughn, at his house the evening of March 25, 2017, shortly before the fire started. When Victim's neighbor dropped off Mr. Vaughn, she noticed an African-American man come from the general direction of Victim's house and heard him ask Mr. Vaughn for a cigarette. The neighbor then observed the man go back across the street toward Victim's house, although the neighbor did not see exactly where he went. Shortly thereafter, the neighbor heard the sound of glass breaking and sirens sometime later. While the neighbor did not know the man, she had seen him walking in the neighborhood on prior occasions.

**Detective Medina's Testimony**

{9}     Defendant was charged with arson, breaking and entering, and violating an order of protection based on the events that occurred on March 25, 2017, and the case proceeded to a jury trial. On the second day of Defendant's trial, the State indicated that it intended to elicit testimony from Detective Medina about two phone calls Defendant made from jail, which had been recorded and transcribed.[1] The State specified that it only intended to have Detective Medina read one portion of his report that related to what Defendant said during the calls, and that it objected to the remainder of the transcribed phone calls coming in as "self-serving" hearsay. Defendant objected to this, arguing, "If [Defendant] says 'I don't know blah blah blah' in one moment and then says 'well it wasn't me, it wasn't me,' I think that should be admissible under the rule of completeness." Defendant later explained that he only wanted to have the ability to ask Detective Medina on cross-examination: "Isn't it true that on the line before [Defendant] said, 'I didn't start that fire?' "

{10}    After reading the relevant portion of the transcribed phone calls, the district court stated that it understood Defendant to be admitting that he had broken in through Victim's window in the past but denying that he broke in on the date of the arson. Although the court agreed that Defendant's statement would be hearsay (if not offered against him), the court believed it was necessary to provide context to Defendant's statements that the State intended to introduce. However, after Defendant clarified that he wanted to read multiple portions of the transcript in which Defendant denied starting the fire, the court ruled that Defendant could ask Detective Medina the question "Didn't

---

[1]Neither the audio recording nor the written transcript were included in the record proper.

[Defendant] deny committing the arson?" instead of the proposed "piecemeal reading of different sections of lines on different pages."

**{11}** In addition to Defendant's objection under the rule of completeness, Defendant also briefly mentioned the best evidence rule and pointed out that there was a recording of the calls that they could play for the jury. However, the court did not address the issue after the parties focused their arguments on the rule of completeness and did not again raise the best evidence rule.

**{12}** At trial, Detective Medina testified that he listened to two recorded phone calls Defendant made from jail. Detective Medina stated that he incorporated portions of Defendant's statements during the calls into his police report and proceeded to read the following from his report regarding the first phone call:

> [Defendant] stated he had gained access through the window of [Victim's residence], and he was not sure if anybody had seen him gain entry. [Defendant] advised [Victim's residence] had caught on fire, and he stated the house didn't actually burn down. Then he stated that was what he heard from someone else.

Detective Medina then continued to read the following from his report regarding the second phone call:

> During the phone call, [Defendant] stated the last time he was by the house was on March 18, 2017. [Defendant] also stated this was the same day [Victim] accused him of being over there knocking and kicking at the front door. [Defendant] stated he was at Mr. Vaughn's house and not at her house. [Defendant] stated [Victim] may have seen him, but if she did, he was over at Mr. Vaughn's. [Defendant] stated he was more than twenty-five feet away from [Victim's] residence.

During cross examination, the following colloquy took place:

> Q.    In the excerpt you read, [Defendant] specifically said the word "was," . . . using the past [tense] word [for] going through the window?
>
> A.    Correct.
>
> Q.    [Defendant] didn't say "I was there on March 25?" . . . "Was" could refer to days prior to March 25, could it not?
>
> A.    It could.
>
> Q.    It could refer to March 10, correct?
>
> A.    It could.

Q.      It could refer to March 18, correct?

A.      Sure.

. . . .

Q.      [Defendant] never stated he was in the house on March 25, correct?

A.      Yes.

. . . .

Q.      Did [Defendant] specifically deny doing the arson?

A.      Yes.

**{13}**    At the conclusion of the trial, the jury convicted Defendant of arson, breaking and entering, and violating an order of protection. Defendant now appeals.

## DISCUSSION

**{14}**    On appeal, Defendant advances several arguments. First, Defendant challenges the district court's evidentiary ruling allowing Detective Medina to read from his police report, which included a transcription he made of portions of recorded phone calls Defendant made from jail. Second, Defendant challenges the sufficiency of the evidence underlying his convictions—specifically arguing there was insufficient evidence to prove his identity as the arsonist. Third, Defendant argues the district court abused its discretion in denying one of his pro se pretrial discovery motions. Finally, Defendant claims he suffered from ineffective assistance of counsel. We address each in turn.

## I.      Evidentiary Arguments

**{15}**    Defendant makes several arguments disputing the propriety of Detective Medina's testimony regarding Defendant's jailhouse telephone calls. Defendant argues the district court abused its discretion in allowing Detective Medina to read his police report regarding those calls because: (1) his testimony violated the best evidence rule; (2) the court did not admit the entirety of Defendant's statements under the rule of completeness; and (3) Detective Medina's police report constituted impermissible hearsay.

## A.      Standard of Review

**{16}**    "Rulings admitting or excluding evidence are generally reviewed for an abuse of discretion." *State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722. The

district court abuses its discretion when its ruling is "obviously erroneous, arbitrary and unwarranted" or "clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citation omitted). Additionally, "[a district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. "[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal." *State v. Torres*, 1999-NMSC-010, ¶ 28, 127 N.M. 20, 976 P.2d 20.

## B.     Detective Medina's Testimony Violated the Best Evidence Rule

**{17}**     The best evidence rule, Rule 11-1002 NMRA, provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." "As a practical matter, the best evidence rule infrequently applies, since a witness can typically testify based on independent firsthand knowledge of an event, even though a writing recording facts related to the event may also be available." *State v. Hanson*, 2015-NMCA-057, ¶ 6, 348 P.3d 1070. However, where the witness does not have independent firsthand knowledge of the event and only testifies as to what the writing, recording, or photograph says or shows, the best evidence rule applies. As one respected treatise explains,

> [A] conversation between two people is an event that may be proved either by testimony from the participants (or from anyone else who heard the conversation) as to what was said or by a tape recording made of the conversation. If the proponent chooses to prove what was said during the conversation by use of the tape recording, then the tape is being offered to prove its own contents. The requirement of the original tape would apply. Testimony by a witness as to what that witness had previously heard on the tape recording, or a written transcript of the original recording, would be rejected unless the original is shown to be unavailable.

2 Kenneth S. Broun et al., *McCormick on Evidence*, *What Constitutes Proving the Content* § 234 (8th ed. 2020) (footnotes omitted); *see also id.* ("Sometimes a witness testifies to the existence of a fact or event as to which that witness has no firsthand knowledge. In such circumstances, the witness is usually relying on a writing, recording or photograph that the witness has read or observed outside of court. When the proponent of the witness's testimony does not present that document in court, there is likely to be a violation of the best evidence rule."); 31 Charles Alan Wright, et al., *Federal Practice & Procedure* § 7184 (1st ed. 2020) ("[A]ny witness with knowledge of facts that exist independent of the contents of a writing, recording, or photograph may testify without raising an issue under Rule [1-]1002[ of the Federal Rules of Evidence]. . . . But where the witness has knowledge only of the contents of such an item, testimony may be excluded under Rule [1-]1002.").

**{18}**     This happens to be one of those rare cases in which the rule applies. Detective Medina had no independent, firsthand knowledge of Defendant's statements made in

jail; rather Detective Medina testified to what he heard Defendant say on the recordings of the phone calls. Thus, Detective Medina's testimony was offered to prove the contents of the recordings, he was only aware of because of the recordings themselves, and the best evidence rule applies as a result. *See* 2 Broun et. al., *supra*, § 234; 31 Wright et. al., *supra*, § 7184; *cf. Hanson*, 2015-NMCA-057, ¶ 6 (holding that the best evidence rule applied when the state attempted to prove the contents of text messages sent by the defendant when the state had no evidence that the defendant sent the messages other than the messages themselves).

**{19}** It follows that the best evidence of the contents of Defendant's recorded telephone calls that Detective Medina listened to were the recordings themselves, not the material the detective placed in his report while listening to the recordings. *Cf. Sun Vineyards, Inc. v. Luna Cty. Wine Dev. Corp.*, 1988-NMSC-075, ¶ 12, 107 N.M. 524, 760 P.2d 1290 (stating that "[t]he document was the best evidence of its contents"). The State does not dispute this but argues that it was Defendant's burden to prove that there was a difference between the statements Detective Medina read from his report and Defendant's statements on the recorded telephone calls. However, such a requirement is not supported by our case law. To the contrary, it was the State's burden, as the proponent of the evidence, "to either produce the original [recordings] or explain why they were unavailable." *State v. Lopez*, 2009-NMCA-044, ¶ 14, 146 N.M. 98, 206 P.3d 1003. While there are exceptions to the best evidence rule, the State failed to meet its burden to demonstrate that any of these exceptions applied. *See* Rule 11-1004 NMRA (listing exceptions); *Lopez*, 2009-NMCA-044, ¶ 14. Hence, the district court erred in allowing Detective Medina to read the transcription he inserted into his police report regarding what he heard while listening to Defendant's recorded telephone call. *Cf. Hanson*, 2015-NMCA-057, ¶¶ 4-16 (holding that the district court erred in allowing a manually-transcribed copy of text messages when the proponent did not demonstrate that an exception to the best evidence rule applied).

## C.    The Rule Violation Does Not Warrant Reversal

**{20}** Despite finding error, we are unpersuaded that the rule violation requires reversal in this case. "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. When determining the harmlessness of violations of the best evidence rule, *McCormick on Evidence* states,

> [The] purpose [of the best evidence rule] is to secure the most reliable information as to the contents of documents, when those terms are disputed. A mystical ideal of seeking "the best evidence" or the "original document" as an end in itself is no longer the goal. Consequently when an attack is made on appeal on the judge's admission of secondary evidence, it seems that the reviewing tribunal should ordinarily make inquiry of the complaining counsel, "Does the party whom you represent actually dispute the accuracy of the evidence received as to the material terms of the writing?" If the counsel cannot assure the court that such a good faith

dispute exists, it seems clear that any departure from the regulations in respect to secondary evidence is likely to be harmless error, or not error at all.

2 Kenneth S. Broun et al., *supra*, § 243.1 (8th ed. 2020). Several jurisdictions have followed this approach when addressing best evidence rule violations. *See, e.g.*, *People v. Bizieff*, 277 Cal. Rptr. 678, 683 (Ct. App. 1991); *State v. Leith*, 205 A.3d 171, 179 (N.H. 2019); *High v. Davis*, 584 P.2d 725, 735 (Or. 1978) (en banc); *Hodges v. Peden*, 634 S.W.2d 8, 11 (Tex. App. 1982).

**{21}** We agree with this logic. It makes little sense to reverse for a best evidence violation when the parties do not genuinely dispute the secondary evidence's accuracy as to the material terms of the original evidence. Reversing in such cases would elevate form over substance and serve no real purpose other than to enforce a rule for the simple reason that it exists. *Cf. State v. Lewis*, 2019-NMSC-001, ¶ 12, 433 P.3d 276 ("[T]o hold that the district court abused its discretion . . . by failing to strictly comply with the formal requirements of Rule 5-611(D) [NMRA] would exalt form over substance where the purpose of the rule has been satisfied." (internal quotation marks and citation omitted)); *State v. Doe*, 1978-NMCA-099, ¶¶ 6-10, 92 N.M. 198, 585 P.2d 342 (rejecting the child's argument that the state's failure to adhere to notice requirements should warrant reversal when the child, in fact, received notice and holding that reversal would be "based on a technicality which exalts form over substance").

**{22}** Here, it does not appear that there was any genuine dispute as to whether Detective Medina's testimony accurately reflected the material portions of Defendant's jailhouse calls. Although Defendant at one point stated that he did not believe the transcript of the recorded calls was "totally accurate," he did not expand on this, and he never disputed the accuracy of Detective Medina's testimony vis-a-vis the material portions of the phone calls (i.e., that Defendant admitted breaking into Victim's house through her window at some point in time, denied starting the fire, and mentioned visiting Mr. Vaughn's house the week before the fire). Nor does Defendant make such an assertion on appeal. Under these circumstances, we fail to see how reversing would further the purpose of the best evidence rule. We, therefore, hold that the State's violation of the rule does not warrant reversal in this case.

## D.     Rule of Completeness

**{23}** Defendant argues the district court abused its discretion in refusing to admit the entire contents of Defendant's phone calls under the rule of completeness. The rule of completeness, embodied in Rule 11-106 NMRA provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." "The primary purpose behind the rule of completeness is to eliminate misleading or deceptive impressions created by creative excerpting." *State v. Garcia*, 2013-NMCA-064, ¶ 11, 302 P.3d 111 (internal quotation marks and citation omitted); *see also State v. Barr*, 2009-NMSC-024, ¶ 35, 146 N.M.

301, 210 P.3d 198 ("Rule 11-106 . . . operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement." (internal quotation marks and citation omitted)), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 36. "Rule 11-106 does not mandate that a whole document automatically becomes competent upon introduction of a portion thereof." *Barr*, 2009-NMSC-024, ¶ 36. "[T]o be properly admitted under Rule 11-106, the party invoking the rule must show that the evidence is relevant to the issue in dispute and qualifies or explains the subject matter of the portion of the writing already admitted." *Id.*

**{24}** Defendant argues the district court should have admitted the entire contents of Defendant's phone calls because "the cross-examination . . . and the [district] court's description of the transcript showed that there were conflicts in the meaning of the phone call[s]." We disagree. First, we note that while Defendant briefly mentioned at one point that he believed he could play "the entire recording," he never requested to introduce the entire contents of Defendant's phone calls or stated that he intended to do so. Rather, Defendant only requested the opportunity to cross-examine Medina about whether Defendant denied starting the fire. Thus, any purported error to introduce the entire content of Defendant's calls is unpreserved. *See* Rule 12-321 NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked.").

**{25}** Second, even if the issue had been preserved, Defendant fails to demonstrate error. "It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal." *State v. Padilla*, 1980-NMCA-141, ¶ 7, 95 N.M. 86, 619 P.2d 190. As a general matter, "[w]hen the record is incomplete, this Court assumes that the missing portions would support the [district] court's determination." *State v. Doe*, 1985-NMCA-065, ¶ 23, 103 N.M. 233, 704 P.2d 1109. We also "indulge all inferences in favor of upholding the verdict." *State v. Riggs*, 1992-NMSC-057, ¶ 14, 114 N.M. 358, 838 P.2d 975. Accordingly, we accept as accurate the district court's characterization of the entirety of Defendant's recorded statements in that he appeared to admit breaking in through Victim's window in the past but denied that he broke in on the date of the arson. To this end, it appears the court met its obligation under Rule 11-106 to allow Defendant to elicit the facts that: (1) Defendant never admitted that he broke into Victim's house on the date of the arson and (2) Defendant denied starting the fire. Under the limited record before us, we cannot conclude that the district court abused its discretion.

## E. Hearsay

**{26}** Defendant argues permitting Detective Medina to read "[t]he description of the call[s] contained in [Detective] Medina's report" was error because they constituted hearsay. "Hearsay" is "a statement that . . . the declarant does not make while testifying at the current trial or hearing, and . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. Hearsay is not admissible except pursuant to an explicit exception in our court rules or by statute. Rule 11-802 NMRA. Defendant concedes he failed to preserve this alleged error and in a single

conclusory statement, contends the error "should be considered as compounding the effect of the preserved errors." We decline to address this argument as it is not only unpreserved but undeveloped with regard to "compounding the effect" of preserved errors. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments). In any event we perceive no merit to this claim as the admission of Defendant's statements were admissible as non-hearsay statements of a party opponent. *See* Rule 11-801(D)(2)(a); *State v. Johnson*, 2010-NMSC-016, ¶ 21, 148 N.M. 50, 229 P.3d 523 (concluding that admission of the defendant's jailhouse calls were admissible as non-hearsay statements of a party opponent.).

## II.    Sufficiency of the Evidence

**{27}**    Defendant claims the State failed to present sufficient evidence to establish his identity as the individual who broke into Victim's house and set the fire—the acts forming the basis of all his convictions. We disagree.

## A.    Standard of Review

**{28}**    The question we must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Lente*, 2019-NMSC-020, ¶ 54, 453 P.3d 416 (internal quotation marks and citation omitted). Accordingly, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Circumstantial evidence, alone, may be sufficient to support the jury's verdict. *See State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence").

## B.    Sufficient Evidence Supports Defendant's Convictions

**{29}**    For the following reasons, we conclude substantial evidence supported Defendant's convictions. First, the State demonstrated that Defendant had broken into Victim's house through her window on prior occasions—similar to the way the arsonist did on the night of the fire. *See State v. Peters*, 1997-NMCA-084, ¶ 13, 123 N.M. 667, 944 P.2d 896 (stating that "the use of modus-operandi evidence to prove identity has frequently been recognized"). For instance, Victim testified that she awoke to Defendant at the foot of her bed one night, despite changing the locks and locking the doors. She further testified that she believed Defendant snuck in through her daughter's bedroom window, which she found open the next morning. Importantly, according to Detective Medina's report, Defendant himself admitted to breaking into Victim's house through her window on at least one occasion.

**{30}**    Second, Defendant's blood was found on the pair of pliers and pruning shears below Victim's broken window the night of the fire, tools which Victim did not recognize

or notice when she had her window secured earlier that morning. Third, Victim's neighbor testified that she heard glass breaking shortly after seeing an African-American man walk over towards Victim's house the night of the fire. Though the neighbor did not identify Defendant as the man she saw that night, she stated she had seen the man in the neighborhood before. This fact, along with Defendant's admission to being at another neighbor's house the week before the fire, could support a reasonable inference that Defendant was the man the neighbor saw the night of the fire. Lastly, the State presented evidence of Defendant's motive to burn Victim's house down: jealousy following a breakup. *See State v. Vigil*, 1975-NMSC-013, ¶ 9, 87 N.M. 345, 533 P.2d 578 ("The question whether the defendant himself did or did not commit the crime for which he was under indictment being in issue, the fact of the existence or non-existence of the motive for such an act was a relevant and very important inquiry" (internal quotation marks and citation omitted)).

**{31}**  In arguing that the evidence was insufficient, Defendant employs a divide-and-conquer approach, parsing out each piece of evidence to explain why that piece, standing alone, is insufficient to prove his identity as the arsonist. We do not review evidence in this manner. *See State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393 (stating that "the evidence is not to be reviewed with a divide-and-conquer mentality"). Rather, we utilize a holistic approach, viewing the evidence in its entirety. *See State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (stating that "[appellate courts] view the evidence as a whole"). In doing so, we conclude a rational juror could find that Defendant broke into Victim's house and set it on fire. *Cf. State v. Lopez*, 1973-NMCA-148, ¶ 4, 85 N.M. 742, 516 P.2d 1125 (stating that "[t]he concurrence of time, place and modus operandi . . . tends to establish the identity of the accused").

**{32}**  And while Defendant does not challenge the sufficiency of the evidence underlying the remaining elements of his convictions, we similarly conclude the evidence was sufficient to prove these as well. *See* UJI 14-1701 NMRA (listing essential elements for arson, which include, in relevant part: (1) intentionally or maliciously starting a fire and (2) starting the fire with intent to destroy or damage property with a value over $20,000); UJI 14-1410 NMRA (listing essential elements for breaking and entering, which include, in relevant part: (1) entering a structure without permission and (2) obtaining entry by the breaking of a window); UJI 14-334 NMRA (listing essential elements for violating an order of protection, which include, in relevant part: (1) entry of a valid order of protection, (2) knowledge of the order's existence, and (3) a knowing violation of the order).

### III.    Defendant's Pro Se Pretrial Discovery Motion

**{33}**  Prior to trial, defense counsel filed a handwritten motion prepared by Defendant for disclosure of discovery in which Defendant requested an unedited copy of his recorded telephone conversations, copies of photographs taken of Victim's house, and copies of all interviews performed in the course of the State's investigation. The State responded that it had previously provided the evidence Defendant was requesting to

defense counsel and had, therefore, met its discovery obligations. The district court denied the motion at a pretrial hearing after both parties declined to make any additional arguments.

**{34}** Defendant argues the district court abused its discretion in denying his motion to receive a copy of the telephone call recording without "adequate inquiries to ensure the protection of [Defendant's] rights[.]" Specifically, Defendant contends the district court should have inquired whether the State committed a *Brady* violation by not providing exculpatory evidence or, alternatively, whether defense counsel violated Defendant's right "to participate in the making of decisions on his own behalf." Defendant raises this argument pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1.

**{35}** To the extent Defendant argues that the district court should have inquired as to whether the State committed a *Brady* violation, we disagree. Neither Defendant, nor his counsel, contested the State's contention that it disclosed all of the requested evidence to defense counsel. Defendant does not cite to, and we are not aware of, any authority for the proposition that the State has an independent duty to ensure that defense counsel provides Defendant with his own copy of the disclosed materials. *See State v. Balenquah*, 2009-NMCA-055, ¶ 12, 146 N.M. 267, 208 P.3d 912 (stating that in order to prove a *Brady* violation, a defendant must prove, inter alia, that the prosecution *suppressed* evidence). Moreover, going to Defendant's alternative argument based on *Riggins v. Nevada*, 504 U.S. 127 (1992), Defendant failed to argue that his counsel did not provide him a copy of the requested evidence—either in his handwritten motion or at the hearing. Under these circumstances, we conclude the district court did not abuse its discretion in denying Defendant's motion without making further inquiries.

## IV.     Defendant Did Not Receive Ineffective Assistance of Counsel

**{36}** Finally, in a single paragraph Defendant contends his counsel was ineffective because he failed to: (1) "object on hearsay grounds to Detective Medina's testimony regarding his phone call[s], in which he read verbatim from his report[]"; (2) "introduce the CD recording of the jail phone call[s] described by [Detective] Medina"; (3) subpoena surveillance video from the area around 606 Arnold, which Defendant contends he requested and which would have proven exculpatory; (4) effectively cross-examine witnesses; and (5) put on a defense of any kind.

**{37}** "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted). "[T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "In order to establish a prima facie case of ineffective assistance of counsel on direct appeal, a defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v.*

*Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Because the record is frequently insufficient to establish whether an action taken by defense counsel was not reasonable or if an error caused prejudice, ineffective assistance of counsel claims are often better addressed in habeas corpus proceedings. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517.

**{38}** However, if on direct appeal a defendant makes a prima facie case for ineffective assistance of counsel on the basis of facts in the record, an appellate court can remand to the district court for an evidentiary hearing. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. A defendant makes a prima facie case when the defendant produces sufficient evidence to allow the trier of fact to infer the fact at issue and rule in the defendant's favor. *Id.*

**{39}** In this case, Defendant has failed to establish a prima facie case of ineffective assistance of counsel. Regarding the first claim, Defendant contends that his counsel was ineffective because he failed to raise a hearsay objection to Detective Medina reading the portions of Defendant's telephonic statements that he inserted into his report. We previously observed that those statements were admissible as non-hearsay statements of a party opponent. *See* Rule 11-801(D)(2)(a); *Johnson*, 2010-NMSC-016, ¶ 21. Thus it was not error for counsel not to object to Detective Medina's testimony on hearsay grounds. There being no error Defendant has failed to make a prima facie case for ineffective assistance of counsel on this basis. *See Arrendondo*, 2012-NMSC-013, ¶ 38 (stating that to prevail on an ineffective assistance of counsel claim requires both error by counsel and that the error prejudice defendant).

**{40}** Defendant next claims counsel was ineffective for not "introdu[cing] the CD recording of the jail phone call[s] described by [Detective] Medina." Generally, the admission of evidence falls within the scope of counsel's trial strategy. *State v. Herrera*, 2004-NMCA-015, ¶ 12, 135 N.M. 79, 84 P.3d 696. Here, the record reveals that defense counsel did not want the jury to hear the entire recordings of Defendant's jail house calls because Defendant made references to his probation officer and his parole revocation in at least one of the recorded calls. Given the prejudicial nature of Defendant's reference to his probation officer and parole revocation, we cannot say that defense counsel was ineffective in failing to present the jury with the CD recording of his jailhouse calls. *See Roybal*, 2002-NMSC-027, ¶ 21 (stating that "if on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance"); *State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 (stating that "a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel" (internal quotation marks and citation omitted)).

**{41}** Defendant also contends counsel was ineffective because he failed to subpoena exculpatory surveillance videos from the area around Victim's residence as requested by Defendant. There are no facts in the record that would allow us to address this claim.

Defendant does not cite to nor is there anything in the record indicating: (1) the existence of surveillance videos in the area around the victim's residence; (2) that he asked his counsel to subpoena surveillance videos; (3) if he did, why defense counsel did not subpoena the videos; and (4) the alleged exculpatory contents of the videos. Therefore, Defendant has failed to establish a prima facie case of ineffective assistance of counsel as to this claim. *See Arrendondo*, 2012-NMSC-013, ¶¶ 38-41 (explaining that where "the record does not contain any evidence that counsel either intentionally or negligently failed to investigate" allegedly key evidence the defendant "had failed to establish a prima facie case of ineffective assistance of counsel[.]") If Defendant believes he can demonstrate ineffectiveness with regard to surveillance videos, he remains free to do so, pursuant to Rule 5-802 NMRA.

**{42}** Defendant next argues his counsel was ineffective because he did not effectively cross-examine witnesses. Defendant does not identify which witnesses were not "effectively" cross-examined or develop any argument demonstrating how the purported shortcoming[s] of counsel were prejudicial. Accordingly, we decline to address Defendant's argument any further. *See State v. Dickert*, 2012-NMCA-004, ¶ 46, 268 P.3d 515 (declining to address the defendant's inadequately developed argument).

**{43}** Finally, Defendant contends his counsel was ineffective because he "did not put on a defense of any kind, but merely rested after the close of the State's case." Again, Defendant offers no argument demonstrating that trial counsel's decision not to present witnesses and "put on a defense" at the close of the State's case was not a strategic choice or that the decision prejudiced the defense. Therefore, we decline to address this inadequately developed argument. *See id.*

**CONCLUSION**

**{44}** For the foregoing reasons, we affirm.

**{45}** IT IS SO ORDERED.

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**