This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39818**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JASON STRAUCH,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Britt Baca-Miller, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Senior Solicitor General
Albuquerque, NM

for Appellee

Jason Strauch
Chaparral, NM

Pro Se Appellant

### MEMORANDUM OPINION

**HENRY M. BOHNHOFF, Judge, retired, sitting by designation.**

**{1}** Defendant Jason Strauch pleaded guilty to three counts of criminal sexual contact with a minor (CSCM) in the third degree (child under thirteen), in violation of NMSA 1978, Section 30-9-13(C)(1) (2003). He originally received a conditional discharge and probation for a period of five years. Defendant appeals the district court's revocation, and denial of his motion to reconsider the revocation, of his probation and the conditional discharge, and imposition of a sentence of the balance of the maximum

eighteen-year prison term.[1] Defendant also claims he received ineffective assistance of counsel in connection with the revocation proceeding. We affirm.

**{2}**     This case has a lengthy procedural history. We have reviewed the entire district and appellate court records, as well as the available recordings of the district court hearings. However, because this is a memorandum opinion and the parties are familiar with the background of the case, we reference only those facts and procedural details that we deem relevant to our analysis.

## BACKGROUND

**{3}**     Defendant was indicted in 2011 on four counts of criminal sexual contact of a minor (child under thirteen) in the second degree, in violation of Section 30-9-13(B)(1). The alleged victim was his daughter. The crimes were alleged to have been committed between 2005 and 2010. The prosecution of Defendant was held in abeyance for several years while the privileged status of Defendant's communications with a social worker was litigated. *See State v. Strauch*, 2015-NMSC-009, ¶ 47, 345 P.3d 317 (holding that Defendant's communications with his social worker were not privileged), *rev'g* 2014-NMCA-020, 317 P.3d 878.

**{4}**     Following remand to the district court, Defendant agreed to plead guilty to the three lesser degree offenses between 2005 and 2007, with the previously alleged offenses to be dismissed. In a sentencing memorandum, Defendant's counsel urged leniency, stressing that Defendant was an engineer employed at national defense research institutions, and that a conditional discharge, *see* NMSA 1978, § 31-20-13 (1994), and probation would permit him to continue making valuable contributions to society. At a July 2016 hearing, the district court accepted the plea agreement, entered an order of conditional discharge as to the crimes to which Defendant pleaded guilty, and placed him on probation for five years.

### Defendant's First Three Probation Violations

**{5}**     Between August 2016 and March 2017, the State filed three motions, along with probation officers' supporting reports, charging Defendant with violating the terms of his probation; each time, the State moved to revoke Defendant's probation. On each occasion, the district court ultimately exercised leniency and continued Defendant's conditional discharge and probation terms.

**{6}**     The first report alleged that Defendant had not been truthful with his probation officers, in particular, that in early August 2016, Defendant had lied to the officer about his whereabouts and his possession of a smart phone. At an early September 2016 hearing, Defendant admitted the allegation and apologized for his error in judgment. The district court revoked but then reinstated his probation.

---

[1]The maximum sentence for each of the CSCM crimes to which Defendant pleaded is six years. *See* NMSA 1978, § 31-18-15(C) (2016, amended 2025).

**{7}** The second report alleged that in late September 2016, without first obtaining permission from his probation officer, Defendant had visited a public park where children could be expected to gather. At a November 2016 hearing, after Defendant admitted to the violation, the district court again revoked but then reinstated his probation. However, the court accepted the parties' joint proposal that, prior to reinstating probation, Defendant would serve sixty days in jail. The court warned Defendant that there was no room for another mistake.

**{8}** The third report alleged that Defendant had consumed a beer in February 2017. At an initial hearing, Defendant admitted the violation and the district court accepted the admission. At the sentencing hearing in late April 2017, a psychologist who had recently evaluated Defendant testified that she had diagnosed him with Autism Spectrum Disorder (ASD), formerly known as Asperger's Syndrome, and suggested his probation violations were attributable to the previously undiagnosed condition. At the conclusion of the hearing, after stating that it did not believe Defendant could handle probation, the court revoked Defendant's probation and sentenced him to six years in prison.

**{9}** Defendant's counsel filed a motion to reconsider the sentence pursuant to Rule 5-801 NMRA. The district court held multiple hearings between December 2017 and October 2018. At several of these hearings, the court heard lengthy testimony not only from the previously retained psychologist but also from a neuropsychiatrist. Both witnesses further addressed the causal connection between Defendant's ASD and his propensity to violate his probation terms, but opined that, with therapy, he should learn to comply with the rules. However, the neuropsychiatrist testified that if, following such therapy, Defendant continued to willfully violate his probation conditions, there would be no reason to continue with probation.

**{10}** Following these hearings, the district court reinstated the original conditional discharge and reinstated Defendant's probation for five years. The court stressed that it usually did not give sex offenders even a second chance, but that it was attempting to accommodate Defendant's ASD. The court emphasized that this was its fourth attempt to work with Defendant but there would not be a fifth, and Defendant needed to understand that he had to comply with even minor conditions. Defendant assured the court that he understood that there was "no wiggle room."

**Defendant's Fourth Probation Violation and Revocation of His Probation**

**{11}** In August 2019, the State filed a fourth motion to revoke Defendant's probation, based on a new report alleging further violations of his probation conditions. The primary allegation was that beginning in late 2018 and continuing into early 2019, Defendant had phoned, texted, and met with a former girlfriend who had a history of driving while intoxicated and with whom his probation officer had instructed him not to associate.

**{12}** At the beginning of the October 3, 2019 hearing on the motion, defense counsel stated that Defendant would admit to violating this "association" condition. Following questioning, the district court accepted the admission.

**{13}** Defendant's neuropsychiatrist addressed the district court. He testified that Defendant had been making progress with therapy but that more was needed. Defense counsel argued that the association violations were not sufficiently egregious to merit full revocation and imposition of a prison sentence, urged the court to focus on steps to restore Defendant as a productive member of society, and proposed a sanction of one year in jail but with continuation of the therapy. At the conclusion of the hearing, the court expressed its frustration with Defendant's continued violations of his probation conditions, notwithstanding the court's repeated leniency. The court concluded, "Probation just doesn't seem to work." By order (October 2019 Revocation Order) entered the following day, the court revoked Defendant's probation and conditional discharge, and imposed the balance of the full eighteen-year sentence.

**Defendant's Reconsideration Motion and Presentment Hearing**

**{14}** In early January 2020 Defendant filed pro se, again pursuant to Rule 5-801, a motion for reconsideration (Reconsideration Motion) of the October 2019 Revocation Order. In the motion, Defendant did not dispute his violation of the terms of his probation, and instead argued that he had been making progress on his therapy with the neuropsychiatrist prior to the revocation of his probation; he had struggled during his probation with a desire for companionship; incarceration reduced his prospects for rehabilitation; and he was not a threat to the community.

**{15}** The district court held a hearing on the Reconsideration Motion on November 12, 2020. The court noted at the beginning of the hearing that, at Defendant's request, new private counsel who had entered an appearance in early 2020, replacing the counsel who had represented him at his October 2019 revocation hearing, would be allowed to withdraw and thus Defendant would be representing himself.

**{16}** Defendant called as witnesses both the neuropsychiatrist who had previously treated him and a new, second psychologist who had recently evaluated him. Both witnesses testified that Defendant's potential for rehabilitation would benefit from more therapy and/or a community or residential treatment program. The psychologist attributed Defendant's impulsivity and poor judgment to his ASD, and opined that, with the recommended further help, he had a 25 to 50 percent chance of no further violations of his probation terms.

**{17}** The State called Defendant's former probation officer as its only witness. The probation officer testified that Defendant's former girlfriend had contacted her following the October 3, 2019 revocation and sentencing hearing. The probation officer recounted the girlfriend's statements that, later that month, Defendant had left several voicemails on her phone; the probation officer had listened to the voicemails and characterized them as "harassment."

**{18}** Following closing arguments, the district court noted that Defendant had committed a heinous offense, and then again reviewed the multiple times the court had shown leniency to him. The court also noted the new psychologist's testimony about Defendant's impulsivity and poor judgment, and the court stated that it did not think Defendant was going to change. Reiterating that "probation just does not work," the court stated that it would deny Defendant's Reconsideration Motion.

**{19}** On April 29, 2021, the district court held a presentment hearing on the State's proposed order denying the Reconsideration Motion. When the court learned that Defendant had not been provided a copy of the proposed order, it read the text of the order into the record. Neither Defendant nor a public defender who had appeared on Defendant's behalf challenged or otherwise commented on the language of the order. Later that day, the district court entered the order (April 2021 Reconsideration Denial Order) as proposed by the State, which found that (1) no new issues were raised in the Reconsideration Motion that would warrant reconsideration of the October 2019 Revocation Order and (2) Defendant's family experienced trauma each time he filed a motion, and denied the Reconsideration Motion. Defendant timely filed a notice of appeal of the order on May 25, 2021.[2]

## DISCUSSION

**{20}** Initially, we address the scope of this appeal, and the standards of our review. In his brief in chief, Defendant states that he is appealing both the October 2019 Revocation Order and the April 2021 Reconsideration Denial Order. He asserts, among other errors, violation of his due process rights.

**{21}** An appeal from a decision of a district court is made by filing a notice of appeal with the district court clerk. *See* Rule 12-202 NMRA. Rule 12-202(C) requires that a copy of the order or judgment that is being appealed be attached to the notice. Defendant's May 25, 2021 notice of appeal states that he is appealing from the April 2021 Reconsideration Denial Order, although a copy of the order is not attached to the notice. A notice of appeal "should be construed to reach the merits and not be dismissed by the use of strict or technical application of the rules." *Baker v. Sojka*, 1964-NMSC-234, ¶ 4, 74 N.M. 587, 396 P.2d 195; *cf. Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 13, 122 N.M. 103, 920 P.2d 1057 (holding that where notice of appeal misstated date of judgment but copy of judgment was attached, other parties received adequate notice that appellant was appealing judgment). Therefore, notwithstanding the missing attachment, the May 25, 2021 notice was sufficient to appeal from the April 2021 Reconsideration Denial Order.

**{22}** However, "a notice is sufficient only if intent to appeal from a specific judgment can be fairly inferred from the notice." *Mabrey v. Mobil Oil Corp.*, 1972-NMCA-172, ¶ 14, 84 N.M. 272, 502 P.2d 297; *accord Sam v. Est. of Sam*, 2004-NMCA-018, ¶ 8, 135 N.M.

---

2In this opinion, we utilize, as the dates for Defendant's filing of court papers while incarcerated, the dates on which he placed the documents in the facility's internal mail system. *See* Rules 5-103(I); 12-307(G) NMRA.

101, 84 P.3d 1066, *rev'd on other grounds*, 2006-NMSC-022, 139 N.M. 474, 134 P.3d 761; *State ex rel. Child., Youth & Fams. Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 42, 130 N.M. 781, 32 P.3 790. Defendant did not specify in his May 25, 2021 notice, that he was appealing the October 2019 Revocation Order, revoking his probation. On this basis, the State argues that the present appeal is limited to challenging the district court's April 2021 Reconsideration Denial Order.[3]

**{23}** Defendant contends that an order issued by our Supreme Court in connection with this appeal authorizes his challenge of the October 2019 Revocation Order. By order entered on October 25, 2022, this Court initially had dismissed this appeal as untimely, because Defendant's notice of appeal of the April 2021 Reconsideration Denial Order was not filed in the district court until June 4, 2021, i.e., not within the general filing deadline for notices of appeal established by Rule 12-201(A)(1)(b) NMRA. Following its grant of Defendant's petition for a writ of certiorari, our Supreme Court reversed the Court of Appeals' October 25, 2022 dismissal order. *See* Order, *State v. Strauch*, S-1-SC-39722 (N.M. Apr. 7, 2023) (Writ Order). The Court noted that, pursuant to Rule 12-307(G)(2), (4) NMRA, a prisoner's pleading is timely filed if it is placed in a prison's internal mailing system within the time otherwise permitted for filing, and therefore Defendant's placement of his notice of appeal in his prison's internal mailing system on May 25, 2021 constituted timely filing.

**{24}** The Writ Order stated that this case was remanded back to this Court "for further proceedings *on the merits*." (Emphasis added.) In our Supreme Court's mandate that followed the Writ Order, *see State v. Strauch*, S-1-SC-39722 (N.M. May 16, 2023), formally remanding this appeal back to this Court, the Supreme Court reiterated it had instructed this Court "to rule *on the merits of the issues raised in this matter*" and that "this cause is remanded for further proceedings, if any, consistent and in conformity with the order of this Court." (Emphasis added.) Defendant argues that, by the emphasized language, the Supreme Court allowed him to appeal the October 3, 2019 revocation.

**{25}** We question Defendant's reading of the Writ Order. First, as identified in Defendant's May 25, 2021 notice of appeal, the April 2021 Reconsideration Denial Order is the only "issue raised in this matter." Second, the Writ Order addresses only the issue of compliance with Rule 12-201(A); it does not address, much less resolve in Defendant's favor, other possible legal infirmities that might operate to bar this Court from reaching the substantive merits of some or all of his arguments, including his failure to identify the October 2019 Revocation Order in his notice of appeal.

---

3The April 2021 Reconsideration Denial Order was erroneously denominated "Order Denying Defendant's Motion to Return Evidence." However, the body of the order clearly stated that the court was denying Defendant's Reconsideration Motion. Defendant made clear in his May 25, 2021 notice of appeal, that he was appealing the denial of the Reconsideration Motion.

The April 2021 Reconsideration Denial Order also stated that it denied Defendant's "Motion to Suspend Sentence and to Reinstate Probation," which he had filed on October 28, 2020. The May 25, 2021 notice of appeal does not specify that Defendant was appealing that motion. Therefore, that ruling is not part of this appeal.

Nevertheless, to minimize the potential for further appeals in this matter, we will address Defendant's challenge to the October 4, 2019, revocation of his probation.[4]

**{26}**   We review a district court's order revoking probation and one denying a Rule 5-801 motion to modify, i.e., reconsider, a sentence for abuse of discretion. *See State v. Jimenez*, 2003-NMCA-026, ¶ 7, 133 N.M. 349, 62 P.3d l231 (stating that probation revocation will be reviewed for abuse of discretion), *rev'd on other grounds*, 2004-NMSC-012, ¶ 1, 135 N.M. 442, 90 P.3d 461; *State v. Herbtsman*, 1999-NMCA-014, ¶ 8, 126 N.M. 683, 974 P.2d 177 (stating that "it is within the trial court's discretion whether to modify a valid sentence"). "In order to establish abuse of discretion, it must appear the trial court acted unfairly or arbitrarily, or committed manifest error." *Jimenez*, 2003-NMCA-026, ¶ 7 (internal quotation marks and citation omitted). We review de novo claims of violation of due process rights at a revocation hearing. *See State v. Castillo*, 2012-NMCA-116, ¶ 9, 290 P.3d 727.

## I.   Defendant Waived Any Argument That the District Court Erred in Determining at the October 3, 2019 Revocation Hearing That Defendant Had Violated a Term of His Probation

**{27}**   When Defendant was first placed on probation in 2016, he agreed in writing that he would "not associate with any person identified by my Probation/Parole Officer as being detrimental to my Probation supervision, which may include persons having a criminal record, other probationers and parolees, and victims or witnesses of my crime or crimes." As stated, his probation officer's August 12, 2019 report, which was attached to the State's fourth probation revocation motion, alleged as "Violation No. 1" that, contrary to the probation officer's instruction, Defendant met with and had phone and text communications with his former girlfriend beginning in late 2018 and continuing into 2019. Defendant argues, however, that (1) at his October 3, 2019 revocation hearing, the State produced no admissible evidence that he ever received any notice or warning not to associate with the former girlfriend; and (2) the former girlfriend in any event was not a "criminal." He also appears to argue that the no-association probation condition, as applied to the former girlfriend, was unreasonable and thus invalid.

**{28}**   We reject Defendant's arguments, because his admission to Violation No. 1 operates as a waiver of any factual or legal challenge to the district court's revocation decision other than on jurisdictional grounds.

> Revocation of probation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [probation] conditions. Because loss of probation is loss of only conditional liberty, the full panoply of rights due a defendant in a criminal trial do not apply.

---

4For the same reason, we decline to consider the State's argument that Defendant's appeal of the October 2019 Revocation Order is untimely because he did not file his notice, or his Rule 5-801 motion, within thirty days of October 4, 2019.

*State v. Guthrie*, 2011-NMSC-014, ¶ 10, 150 N.M. 84, 257 P.3d 904 (alterations, internal quotation marks, and citation omitted). We will assume without deciding that no greater requirements would apply to establishing the validity of an admission of a probation violation than those applicable to establishing the validity of a guilty plea. *But cf. People v. Rial*, 249 N.W.2d 114, 115-16 (Mich. 1976) (declining to impose same restrictions and standards on a defendant's admission of probation violation that are applicable to criminal defendant's guilty plea).

**{29}** In New Mexico,

> a plea of guilty or nolo contendere, when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory and constitutional rights, including the right to appeal. Thus, *a voluntary guilty plea ordinarily constitutes a waiver of the defendant's right to appeal* [*their*] *conviction on other than jurisdictional grounds*.

*State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.3d 896 (emphasis added) (internal quotation marks and citations omitted). "Jurisdictional error refers to an action taken by a court that does not have the power to adjudicate the question involved. The sole question on appeal, then, is whether the district court had the authority to proceed as it did, even if its decision was in error or was an abuse of the court's discretion." *State v. Mortensen*, 2025-NMCA-026, ¶ 9, 576 P.2d 438 (citation omitted).

**{30}** Defendant's admission satisfied these requirements for a guilty plea and, by extension, a probation violation admission. At the beginning of the October 3, 2019 hearing, the district court closely questioned Defendant on his understanding of his admission and its consequences. Defendant acknowledged: he had sufficient time to discuss his admission with his counsel; he was satisfied with their advice; he was giving up his right to question the State's witnesses, testify himself, and call his own witnesses; he was giving up his right to have the State carry its burden of proving the probation violation allegations as well as his right to appeal; and by admitting to Violation No. 1, he was "opening up [himself] to the full balance of [his] sentence."

**{31}** Defendant appears to argue that, notwithstanding his admission, the State still had to prove the violation. Defendant is mistaken. Ordinarily, "[i]n a probation revocation proceeding, the [s]tate bears the burden of establishing a probation violation with a reasonable certainty." *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493. Defendant's acknowledgements freed the State from this burden: in particular, the State no longer had to present testimony or other admissible evidence to establish that, as alleged in the August 12, 2019 probation violation report, (1) the probation officer had instructed Defendant not to associate with the former girlfriend; and (2) contrary to his probation terms, he willfully had done so. His challenges to the sufficiency of the evidence of his violations that he now makes on appeal are therefore barred. *Cf. State v. Rickard*, 1994-

NMCA-083, ¶ 13, 118 N.M. 312, 881 P.2d 57 (holding that guilty plea bars challenge to sufficiency of evidence on appeal), *rev'd in part on other grounds*, 1997-NMSC-111, ¶ 1, 118 N.M. 586, 884 P.2d 477.

**{32}**    Similarly, the State no longer had to establish the reasonableness of applying the no-association probation condition to the former girlfriend. A probation condition must be reasonably related to a defendant's rehabilitation. NMSA 1978, § 31-20-6(F) (2007). "To be reasonably related, the probation condition must be relevant to the offense for which probation was granted." *State v. Baca*, 2004-NMCA-049, ¶ 18, 135 N.M. 490, 90 P.3d 509 (internal quotation marks and citation omitted). Terms and conditions of probation can be set aside if they "(1) have no reasonable relationship to the offense for which the defendant was convicted, (2) relate to activity which is not in itself criminal in nature, *and* (3) require or forbid conduct which is not reasonably related to deterring future criminality." *State v. Williams*, 2006-NMCA-092, ¶ 3, 140 N.M. 194, 141 P.3d 538 (alteration, internal quotation marks, and citation omitted). Defendant appears to argue that barring him from associating with the former girlfriend was not reasonably related to the CSCM offense for which he was convicted, concerned an activity that itself was not criminal in nature, and was not reasonably related to deterring future criminal activity. However, his admission that he had violated the probation condition waived that argument.

## II.    Defendant Failed to Preserve Any Argument That the District Court Erred in Considering Defendant's Ex-wife's Letter During Sentencing

**{33}**    At the October 3, 2019 hearing, State's counsel disclosed that Defendant's ex-wife, the mother of the victim, had written a letter to the district court; a copy had been provided to defense counsel. The letter is not in the court record that was submitted to this Court. However, the court had characterized the letter as both describing how Defendant had abused his daughter and stating that the ex-wife and the daughter were having a difficult time moving forward, and then observed that in sentencing it had to consider not just Defendant but also the community and the victims. Defendant asserts that, in addition to making statements about his offense, in the letter the ex-wife falsely stated that he had not paid child support and improperly commented on his mental condition. Defendant acknowledges that his defense counsel did not object to the court's consideration of the letter.

**{34}**    On appeal, Defendant argues that the letter was unfairly prejudicial in violation of Rule 11-403 NMRA and a violation of his due process rights, because it was "untested and not subject to confrontation." We decline to consider this argument: because Defendant did not raise these objections below, any abuse of discretion or other error by the district court in considering the letter was not preserved for review by this Court. *See* Rule 12-321(A) NMRA; *Moody v. Stribling*, 1999-NMCA-094, ¶ 45, 127 N.M. 630, 985 P.2d 1210 ("Due process claims are not exempt from the fundamental requirement of preservation."); *see also State v. Vigil*, 1982-NMCA-058, ¶ 18, 97 N.M. 749, 643 P.2d 618 (indicating that the inadmissibility of hearsay may be waived in a probation revocation proceeding by failure to object).

**III.     The District Court Did Not Deny Defendant's Due Process Rights or Otherwise Abuse Its Discretion at the November 12, 2020 Hearing on His Reconsideration Motion or the April 29, 2021 Presentment Hearing**

**{35}**     As stated, at the November 12, 2020 hearing on Defendant's Reconsideration Motion Defendant's probation officer testified about voicemail messages that Defendant, calling from jail or prison facilities, had left on his former girlfriend's phone following his October 3, 2019 revocation and sentencing hearing. Defendant did not object to any of this testimony.

**{36}**     The district court afforded Defendant the opportunity to cross-examine the probation officer. Defendant did not, however, ask any questions and instead began to make his own comments about the voicemail messages. The court admonished Defendant not to make any statements and instead only ask questions of the witness. Defendant thereupon stated that he had no questions and the probation officer was excused.

**{37}**     At that point the district court allowed first Defendant and then State's counsel to give closing argument. Defendant briefly commented on his inability to properly prepare for the hearing due to the COVID pandemic and resulting lockdown at the prison in which he had been incarcerated: he was allowed only limited time in the prison library, and he was denied attorney calls and copies of his medical records. Defendant then addressed at greater length his efforts at rehabilitation while in prison during the past year, again notwithstanding the difficulties created by the COVID pandemic and resulting prison lockdown. Defendant did not address the probation officer's testimony in his closing.

**{38}**     In a brief closing, State's counsel did not mention the probation officer's testimony, but did assert that Defendant had molested his daughter over a period of four years. Defendant did not object while counsel was speaking, but when the State had finished Defendant asked to respond to counsel's argument. The court refused the request, stating that Defendant had already made his argument.

**{39}**     At the April 29, 2021 presentment hearing, Defendant did not address the language of the proposed order. Instead, he again spoke, this time in considerable detail, about the problems he said he had encountered at his prison facility that hindered his ability to prepare for the November 12, 2020 hearing; and also addressed at length the poor representation he claimed he received from the private counsel whom he had engaged in early 2020, which he claimed also prevented him from adequately preparing for the hearing on his Reconsideration Motion. The district court eventually stopped him, stating that his complaints were more appropriately addressed in a habeas corpus proceeding. Defendant interjected that at the November 12, 2020 hearing, he was not able to address these points in his closing statement. The court reiterated that it would not consider them, because they were issues that arose after he was incarcerated following his October 2019 sentencing.

**A. The Probation Officer's Testimony and State's Counsel's Closing Argument**

**{40}** Defendant argues that the district court prevented him from objecting to or rebutting the probation officer's testimony and State's counsel's closing argument at the November 12, 2020 hearing, and in doing so abused its discretion and deprived him of his due process right to defend himself.

**{41}** Again, "[b]ecause loss of probation is loss of only conditional liberty, the full panoply of rights due a defendant in a criminal trial do not apply." *Guthrie*, 2011-NMSC-014, ¶ 10 (alterations, internal quotation marks, and citation omitted). The minimum due process requirements applicable to probation revocation include "an informal hearing structured to assure that the finding of a probation violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [defendant's] behavior." *Id.* ¶ 11 (alteration, internal quotation marks, and citation omitted). We will assume without deciding that the same minimum due process requirements that apply in a probation revocation hearing would apply in a hearing on a motion to reconsider the revocation.

**{42}** We are not persuaded that the district court violated Defendant's due process right or otherwise abused its discretion in limiting his ability to address the probation officer's testimony and/or the State's argument at the Reconsideration Motion hearing. With respect to the probation officer's testimony, first, Defendant never objected to it. Second, Defendant in fact had an opportunity to make, during his closing argument, any statement he wished about the probation officer's testimony, since his argument immediately followed the testimony. He did not do so. As stated, a defendant may waive due process violations by not objecting. *See Moody*, 1999-NMCA-094, ¶ 45. Third, Defendant's request to respond to counsel's argument cannot be viewed as a request to address that testimony, because counsel did not mention it.

**{43}** With respect to State's counsel's argument, first, Defendant has not provided any authority to support the premise to his argument, that his limited due process rights in the context of revocation of his probation included a specific right to rebuttal during closing argument. We are aware of no such authority. *See Lee v. Lee* (*In re Adoption of Doe*), 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where arguments in briefs are unsupported by cited authority, the appellate court will assume none exists). Second, although Defendant appears to object to the factual accuracy of counsel's statement about his abuse of his daughter over the course of four years, because he pleaded guilty only to CSCM during a two-year period, he never objected to the argument when it was made.

**{44}** Moreover, with respect to both the probation officer's testimony and the State's argument, Defendant provides no basis for concluding that the district court's denial of the Reconsideration Motion was influenced, much less driven, by the probation officer's testimony or the comment by counsel. Rather, in its ruling that followed the closing arguments, the court focused on the expert witnesses' testimony and stressed the same points it had made a year earlier, when it had revoked Defendant's probation:

Defendant had committed a serious offense; the court had already shown leniency several times; and, given the series of violations, probation simply did not work. *See State v. Neal*, 2007-NMCA-086, ¶ 40, 142 N.M. 487, 167 P.3d 935 (declining to find due process violation in absence of any indication that trial court "was swayed" by admission of letter during probation revocation hearing).

## B.    Preparation for the Reconsideration Motion Hearing

**{45}**    Defendant argues that in not permitting him to present evidence and otherwise fully address the obstacles he confronted attempting to prepare for the November 12, 2020 hearing on his Reconsideration Motion, first in his closing argument at that hearing and then at the April 29, 2021 presentment hearing, the district court denied his due process right to be heard. We disagree.

**{46}**    First, the appropriate manner in and time at which to address any difficulty in preparing for the November 12, 2020 Reconsideration Motion hearing would have been to ask to delay the hearing either before or when it began. Moreover, the record does not reflect that at that hearing the district court prevented Defendant, by either imposing a time limit on how long he could address the court or limiting the subjects he could address, from addressing the obstacles. Indeed, during his closing argument Defendant did mention, albeit briefly, that he had not been able to prepare for the hearing because at the prison he had been permitted only limited library time and he was denied calls with his attorney and copies of his medical records. There is no indication that, if Defendant had wished to address the court further regarding his problems with the prison—or with his attorney—he would not have been permitted.

**{47}**    Second, the limited purpose of the April 29, 2021 presentment hearing was to provide both parties with an opportunity to address whether the proposed written order accurately reflected the court's oral ruling. *See In re Adoption of Homer F.*, 2009-NMCA-082, ¶ 28, 146 N.M. 845, 215 P.3d 783 (stating that the purpose behind procedural rules governing presentment of proposed orders is to allow resolution of disagreement about the language of court orders). Defendant does not assert that the April 2021 Reconsideration Denial Order does not accurately reflect the district court's November 12, 2020 oral ruling, or otherwise challenge the form of the order. That being the case, any attempt by Defendant to present additional information or argument directed at the propriety of the district court's October 2019 revocation decision, effectively using the presentment hearing to urge further reconsideration of the court's ruling on his motion to reconsider, would have been improper in any event.

**{48}**    Third, while Defendant generally complained at the presentment hearing that the prison facility's and his former counsel's actions and inactions prevented him from preparing for the November 12, 2020 hearing, he never identified to the district court any specific information or argument—relevant to reconsideration of the revocation decision—that he was unable to provide at the November 12, 2020 hearing as a result of these problems. He also does not provide such explanation in his appellate briefing. We decline to speculate about the prejudice that Defendant might have suffered as a

result of the court's limitations on what subjects he could address at the presentment hearing. *See State v. Duran*, 1988-NMSC-082, ¶ 12, 107 N.M. 603, 762 P.2d 890 (holding that to establish a due process violation, a defendant must demonstrate prejudice), *superseded by rule on other grounds as stated in State v. Gutierrez*, 1998-NMCA-172, ¶ 10, 126 N.M. 366, 969 P.2d 970, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110.[5]

**{49}** Fourth, we agree with the district court that Defendant's complaints about the prison and his counsel are properly addressed in a habeas corpus proceeding. *See* Rule 5-802 NMRA; discussion *infra* Part IV.

## IV. Defendant Fails to Establish a Prima Facie Case of Ineffective Assistance of Counsel

**{50}** Defendant claims that, in several respects, he received ineffective assistance of counsel at the October 3, 2019 revocation hearing. He claims that his counsel did not investigate the alleged probation violations and then "advised" or "instructed" him to plead to an unsubstantiated, legally insufficient probation violation. He claims that counsel did not question his former girlfriend and the probation officer about his communications with the girlfriend. He claims that counsel did not challenge the letter that his ex-wife had written to the district court prior to the October 3, 2019 revocation hearing. And he claims that counsel did not present mitigating evidence. We review claims of ineffective assistance of counsel de novo. *State v. Crocco*, 2014-NMSC-016, ¶ 11, 327 P.3d 1068; *State v. Aragon*, 2009-NMCA-102, ¶ 8, 147 N.M. 26, 216 P.3d 276.

**{51}** Defendants in criminal proceedings have a constitutional right to effective assistance of counsel. *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *Id.* (internal quotation marks and citation omitted).

**{52}** "When an ineffective assistance of counsel claim is first raised on direct appeal, [the appellate court] evaluate[s] the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full

---

[5]On May 25, 2021, following entry of the Reconsideration Denial Order and on the same day that he filed his notice of appeal, Defendant filed a "Motion Objecting to Denying Motion to Return Evidence." In that motion, Defendant addressed what he claimed was new evidence relating to his alleged probation violations in 2018 and 2019 (including the allegations of associating with the former girlfriend, which he had admitted and formed the basis for the district court's revocation of his probation on October 3, 2019). Defendant contended that his counsel did not present this evidence at the revocation hearing and further that he was not able to present the evidence at the November 12, 2020 hearing on his Reconsideration Motion. The motion is essentially a motion to reconsider the denial of his Reconsideration Motion. The district court entered an order denying the motion on June 25, 2021, noting that Defendant had admitted to violating the terms of his probation.

In his brief in chief, Defendant briefly asserts the court erred in denying the motion. Even assuming Defendant had appealed the June 25, 2021 order, the arguments he advanced in his May 25, 2021 motion were waived by his admission that he violated the terms of his probation. *See* discussion *supra* Part I.

determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* "A prima facie case is made if [the d]efendant produces enough evidence to allow the fact-trier to infer the fact at issue and rule in [the d]efendant's favor." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). "Without an adequate record, an appellate court cannot determine that trial counsel provided constitutionally ineffective assistance." *Id.* ¶ 15.

**{53}** A defendant establishes the attorney error element of an ineffective assistance of counsel claim by demonstrating that defense counsel failed to exercise "the skill, judgment, and diligence of a reasonably competent defense attorney." *State v. Hosteen*, 1996-NMCA-084, ¶ 5, 122 N.M. 228, 923 P.2d 595. Defense counsel's actions are presumptively reasonable; to overcome this "strong" presumption, *see Lytle v. Jordan*, 2001-NMSC-016, ¶ 47, 130 N.M. 198, 22 P.3d 666, a defendant must show the challenged action "could not be considered sound trial strategy." *State v. Miera*, 2018-NMCA-020, ¶ 31, 413 P.3d 491 (internal quotation marks and citation omitted). A prima facie case of attorney error is not made "if there is a plausible, rational strategy or tactic to explain the counsel's conduct." *Lytle*, 2001-NMSC-016, ¶ 26 (internal quotation marks and citation omitted). To establish a prima facie case of prejudice, a defendant must demonstrate that counsel's errors prejudiced their defense such that there was a reasonable probability that the outcome of the case would have been different absent the error. *Aragon*, 2009-NMCA-102, ¶ 16.

**{54}** The record in this case is insufficient to address Defendant's claims that his defense counsel did not adequately investigate or challenge the alleged probation violations. The record reflects that the district court had scheduled the fourth probation revocation motion to be heard on September 5, 2019, but the court granted defense counsel's request for a several-week postponement and a "full evidentiary hearing." The court then rescheduled the hearing for October 3, 2019. However, no evidence is in the court record regarding what steps counsel took, or did not take, during those four weeks to investigate the allegations in the probation violation report. We do not know whether counsel interviewed the former girlfriend and/or the probation officer and, if so, whether they determined that the allegations that Defendant had been instructed not to contact the former girlfriend but nevertheless texted, phoned and met with her were well-founded. *Cf. State v. Pamphille*, 2021-NMCA-002, ¶ 41, 482 P.3d 1241 (stating that, where there was no evidence in the record that defense counsel intentionally or negligently failed to investigate allegedly key evidence, the defendant failed to establish prima facie case of ineffective assistance of counsel). Importantly, we also do not know what evidence supported the other probation violations alleged in the fourth probation violation report, any one of which could support revocation and thus a conclusion that any failure to investigate or oppose the allegation of contact with the former girlfriend did not result in prejudice. *See Leon*, 2013-NMCA-011, ¶ 37 (stating that district court's revocation of probation will be upheld if sufficient evidence supports any alleged violation). Thus, Defendant's counsel rationally could have determined that the better strategy was to admit the violation and focus their efforts on trying to persuade the

district court to impose a sanction less than probation revocation and the full prison sentence. *Cf. Lytle*, 2001-NMSC-016, ¶ 50 (holding that, absent showing that result of trial would have been different, defense counsel's failure to hire experts for consulting or testifying could not establish ineffective assistance of counsel).

**{55}**    The record also does not establish ineffective assistance of counsel with respect to the ex-wife's letter. As stated, a copy of the letter is not in the record. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791 (stating that "[i]t is the duty of the appellant to provide a record adequate to review the issues on appeal"). Moreover, and even assuming that the ex-wife was subject to subpoena, we do not know whether Defendant's counsel had interviewed her before the hearing and, if so, whether they determined that calling her to testify at the probation revocation hearing would harm Defendant's position more than help it. *See State v. Orosco*, 1991-NMCA-084, ¶¶ 34-36, 113 N.M. 789, 833 P.2d 1155 (stating that a court "will not attempt to second-guess tactics and strategy of trial counsel," and noting that calling a witness was a "risky proposition"). There also are no facts in the record that would establish that the outcome of revocation hearing would have been different had the ex-wife testified.

**{56}**    The same considerations—a lack of sufficient evidence to establish both elements of a prima facie case of ineffective assistance of counsel—apply to Defendant's argument about mitigating evidence. Defendant argues that defense counsel failed to apprise the district court that a neighbor friend had died prior to "the violation," causing him emotional trauma, and that he had also injured himself in a serious bicycle accident prior to his text messages with the former girlfriend. The timing of both incidents is unclear, given that, according to the probation violation report in question, Defendant's phone calls, texting and meetings with the former girlfriend extended over a period of ten months. There also is no evidence that Defendant informed his counsel of these events. Further, there is no indication that this information would have persuaded the court to impose a lesser sanction for the violations than revocation of probation and imposition of a prison sentence.

**{57}**    We conclude that the record does not establish a prima facie case of ineffective assistance of counsel, and we therefore decline to address the issue further. Our decision does not, however, preclude Defendant from pursuing a habeas corpus petition pursuant to Rule 5-802.

**CONCLUSION**

**{58}**    Probation is an act of clemency, and New Mexico courts have broad authority to revoke it. *Neal*, 2007-NMCA-086, ¶ 25 (citing *State v. Lopez*, 2007-NMSC-011, ¶ 12, 141 N.M. 293, 154 P.3d 668). Given the facts and circumstances of this case—most notably, the serious nature of Defendant's crimes; the multiple times the district court had shown leniency; Defendant's repeated, admitted failures to comply with his probation terms; and the expert testimony regarding the likelihood that he would

continue to violate—the district court did not abuse its discretion in revoking Defendant's probation and conditional discharge, and imposing a sentence of imprisonment.

**{59}** We affirm the district court's October 2, 2019 order, revoking Defendant's conditional discharge and probation, and imposing sentence; affirm the district court's April 29, 2021 order, denying Defendant's "Motion for Reconsideration of Sentence"; and deny Defendant's claim of ineffective assistance of counsel.

**{60}** **IT IS SO ORDERED.**

**HENRY M. BOHNHOFF, Judge, retired**
**Sitting by Designation**

**WE CONCUR:**

**RICHARD C. BOSSON, Justice, retired**
**Sitting by Designation**

**MICHAEL D. BUSTAMANTE, Judge, retired**
**Sitting by Designation**